# The People of the State of Illinois, *ex rel.* Charles Becker

*v.*

# Orlin H. Miner, Auditor.

1. Taxes—*whether the two mill tax and school tax were embraced in the act of 1867, in aid of the "American Bottom Board of Improvement."* The act of 1867, which provides that the State tax, raised in certain townships in St. Clair county, shall be appropriated for a term of years, to assist in the construction of certain

improvements in the American Bottom, did not embrace the two mill tax provided by the constitution, nor the tax assessed for the maintenance of public schools.

2.  Two MILL TAX—*to what purpose it may be applied.*  The constitutional provision levying the two mill tax to. be devoted to the payment of the State debt, secures the fund arising therefrom from legislative innovation, and the Legislature has no power to divert it to other purposes.

3.  SCHOOL TAX—*may be diverted, by express provision.*  A law which in *general terms* appropriates the State taxes of a certain locality to a specific purpose, will not be construed as embracing the school tax, already appropriated by a previous law, to a specific purpose.

4.  TAXES IN TRANSITU—*of their appropriation before they are received in the State treasury.*  When the money collected for taxes is in the State treasury, it can be drawn therefrom only by means of appropriations made by law; but whether in the State treasury, or in the hands of the collector, it is alike the property of the State, and may be drawn from the hands of the collector in the same mode.

5.  APPROPRIATION—*its requisites*—It is not essential to an appropriation of the money of the State by the legislature, that it should be of an amount certainly ascertained prior to the appropriation.

6.  ALTERNATIVE MANDAMUS—*of a demurrer to the return.*  Where a return to an alternative writ of mandamus controverts no fact alleged in the writ, it is nothing more than a demurrer to the writ, and a demurrer to the return is not necessary.

This was a proceeding in the name of the People of the State of Illinois, on the relation of Charles Becker, against Orlin H. Miner, Auditor, on an application for mandamus.

A statement of the case is fully given in the opinion of the court.

Mr. GUSTAVUS KOERNER, for the relator.

Mr. ROBERT G. INGERSOLL, Attorney General, for the respondent.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

On the sixth of March, 1867, the General Assembly of this State passed an act entitled, "An act for the relief of the

49—46TH ILL.

citizens of the American Bottom in St. Clair county," by the first section of which it was provided, that the State tax raised in townships one and two, north of ranges nine and ten, west of the third principal meridian, in St. Clair county, should be appropriated for the term of five years, to assist in paying for building, improving and repairing levees and embankments, built, and to be built, by the American Bottom Board of Improvement, chartered by an act of the same General Assembly, approved February 10, 1853, to prevent the lands in the American Bottom, in those townships, from being overflowed by the high waters of the Mississippi river.

The second section required the county clerk of St. Clair county to give to the treasurer of this company, so soon as practicable after the return of the books each year, including 1866, should be made to him by the assessor, a certificate of the amount of the State tax to be collected from those townships, and transmit a similar one to the auditor of public accounts; on presentation of this certificate to the county collector, he was required, after the deduction of legal abatements and commissions, and upon filing a bond, to pay over to the company treasurer the balance of the amount so certified, and the auditor was authorized to give the collector credit for the amount of this certificate upon a settlement with him for taxes due the State. Sess. Laws 1867, p. 152.

On the eighteenth of June, 1867, the county clerk of St. Clair county issued to the treasurer of this company the required certificate, by which it appeared the State taxes in those townships, for 1866, amounted to the sum of twelve thousand nine hundred and forty-six dollars and eleven cents, which the treasurer, on that day, duly presented to Charles Becker, then sheriff and *ex officio* collector of St. Clair county, and demanded payment thereof. The collector paid on the certificate about eight thousand dollars, and on a settlement with the auditor, on the 25th of July thereafter, that officer refused to allow the collector a credit for the amount of the

certificate with the proper abatements and commissions, he insisting, that the company was only entitled to the sum of five thousand, three hundred and sixteen 27-100 dollars. On this refusal, the collector obtained an alternative mandamus against the auditor, to show cause why he did not allow the credit for the full amount of the certificate, and on failure, that a peremptory mandamus issue, commanding him to give the credit as claimed.

The auditor, in his return to the writ, admits he had received from the county clerk of St. Clair county, a certificate, similar in all respects to that issued to the treasurer of the company, and by him presented to the collector, the relator herein. The auditor also admits, that the relator made a demand for a credit for the amount of this certificate on his settlement for the taxes collected, and that he refused the credit, alleging as reasons for his refusal : 1st. That the act of 1867 was unconstitutional. 2d. That if it was not so, the Legislature had no power to divert from the payment of the State debt, the amount of the two mill tax, so called. 3d. That a portion of these taxes had been appropriated to the maintenance of a system of common schools, and the act should be construed to mean only such taxes as were not otherwise appropriated. 4th, That the legislature has no power to grant away taxes not imposed at the time of the grant, the amount not being known at the time of the enactment of the law.

Unnecessarily, as we think, the relator demurred to the return, when the return itself is nothing more than a demurrer to the writ. No fact is controverted by the return, and no question raised, other than questions of law.

The Attorney General, on behalf of the Auditor, in arguing the first objection made to the claim of the relator, admits the general assembly has the right to appropriate money to any object, and for any purpose, with few exceptions, but he questions their right to appropriate taxes yet to be raised upon or within certain districts of country for a term of years, for any

purpose whatever. He refers, in this connection, to section 26 of article 3 of the constitution, by which it is declared that "No money shall be drawn from the treasury but in consequence of appropriations made by law ; and an accurate statement of the receipts and expenditures of the public moneys shall be attached to, and published with the laws, at the rising of each session of the general assembly."

From this, he infers, that the legislature can exercise no control over the money of the State, until it is actually in the treasury ; that they have no power to stop it *in transitu.* He argues, also, that the legislature has no right to receive any thing but money in payment of taxes, and have no power to say to the citizens of certain districts of country, if you will make certain roads, ditches and embankments, such works will be received in lieu of the taxes assessed against you ; and from this the inference is drawn that the taxes imposed upon those citizens cannot be employed by the legislature in erecting such structures, or be diverted, for that purpose, from the State treasury. This is a specious, as well as a strong argument, against the power exercised in passing this law, but we think not conclusive. The argument is more against the policy of such legislation than against the power; for when it is admitted the legislature may appropriate money for almost any conceivable purpose, the manner in which it shall be done becomes a different question, and that is settled by the section of the constitution cited. When the money collected for taxes is placed in the treasury, it can be drawn therefrom but in consequence of appropriations made by law ; and the same is true, if the money is in the hands of the collector, not paid into the treasury. It cannot be drawn from him but in the same mode. Suppose the legislature should empower the collector of St. Clair, or of any other county, instead of paying the public money in his hands to the State treasurer, he should go with it into the money market and purchase our State indebtedness, for which, being surrendered by him to the

proper State authority, he should have a credit on his collections. Can it be said such a law would be against the constitution? What clause does it violate? However much we might deprecate such legislation, and condemn its policy, the power of the legislature to give such authority must be admitted; at any rate, such a law would not be so clearly and palpably in the face of the constitution, as to justify this court in declaring it null and void. Wherein does the law under consideration differ in principle from the one supposed? In both cases the taxing power is carried out, for the taxes are actually collected of the tax payers. When collected, they have become the money of the State; the amount is certain and known, and it is appropriated by an act of the legislature for a purpose which is admitted to be within the constitutional competency of the legislature, and an accurate and definite statement of the receipt and expenditure, can be attached to, and published, with the laws. There is no difficulty, when the Auditor is making his report, to state the amount of taxes collected yearly in those townships, and none, in crediting the account with the payment by the collector to the treasurer of the company, citing the act of the legislature under the authority of which it was done. This mode of legislation, dangerous and improvident as it may be, does not, however, exempt any taxable citizen in those townships from the payment of a tax in proportion to his property. He is taxed, and the tax is collected, and, in its passage to the public treasury, it is diverted by this act to the treasury of the American Bottom Improvement Company. There is no force in the objection that the appropriation is for no certain amount. Would it not be competent for the legislature to appropriate to the construction of a bridge over a stream in any one county of the State, one-half the actual cost of the bridge, the amount to be ascertained by the County Court? We see nothing contrary to the constitution in such an enactment, however injudicious and ill-advised it might be. But this we do not deem

as in any way maintaining the unconstitutionality of this act. It is not essential or vital to an appropriation that it should be of an amount certainly ascertained prior to the appropriation. There is no requirement of that kind in the constitution. As a general principle, whatever our State Constitution does not prohibit, the general assembly may do. The command of that instrument would seem to be sufficiently regarded by the actual appropriation in pursuance of a law to that effect.

It is further insisted by the Attorney General, that unless some certain amount be appropriated, and to be drawn from the treasury, it would be impossible to know at the time of the enactment, what the State tax would be in the specified townships for the ensuing five years, and should legislation of this kind be sustained, the taxes would soon be paid in receipts, signed by presidents and secretaries of all kinds of companies that may be fortunate enough to get the State tax to be collected in certain districts, granted or appropriated to them.

This is a strong argument against the policy of such legislation, but it leaves the power untouched. The power may be abused, but judging from the past, it is not like to be in this particular. We again repeat, it is unwise, unsafe and very loose legislation, but are unable to say it is in violation of the constitution. The sum and substance of this act, is a direction to the collector of the taxes in these townships, on a proper certificate being presented to him, to pay the money to the treasurer of this Improvement Company instead of to the State treasury, and on so doing, he shall have credit with the Auditor on his annual settlement, for taxes collected. We see nothing in the constitution so plainly and palpably prohibiting this species of legislation, as to require us to say it is in violation of that instrument, unsafe, loose and dangerous as it is.

A portion of the taxes collected on the property of the people of this State, in those townships, as in all others, has been, by a constitutional provision, deemed sacred, and secure from legislative innovation, devoted to the purpose of paying

the State debt. It is article 15, providing for a tax of two mills upon each dollar's worth of taxable property, in addition all other taxes. This fund, so created, is to be kept separate, and is to be, annually, on the first day of January, apportioned and paid over *pro rata* upon all such indebtedness, other than the canal and school indebtedness, as may for that purpose be presented by the holders of the same, to be entered as credits upon, and to that intent, in extinguishment of the principal of such indebtedness.

We have had occasion, heretofore, to express the decided opinion of this court on the character of this provision of the constitution, and to declare that an act of the general assembly by which this fund was attempted to be diverted, was null and void. *The People, ex rel.* v. *The Auditor,* 30 Ill, 434.

In that case, the legislature had, in 1861, by law, transferred the proceeds of this two mill tax to the revenue fund, which this court declared, after solemn argument, they had no constitutional power to do.

We can see no difference in principle, between that diversion of this fund, and the act under consideration. This two mill tax is not excepted in the law, and to the extent of appropriating that fund to this company, the law is null, and cannot be enforced, as to that fund.

In regard to another portion of the taxes in those townships, a portion raised on every dollar's worth, has been, by solemn act of the legislature, appropriated and dedicated to the encouragement of education, by the establishment of free schools in each township of the several counties of this State.

In giving a construction to the act before us, we must presume the legislature was cognizant of this vast system, which had been so long established, and that it was not their intention, in patronizing the improvement of the American Bottom, to take from this system any of its sustenance. When then, they appropriated the taxes collected in those townships to this improvement, it must be understood, as the Auditor contends,

such taxes as had not been otherwise appropriated. By this construction, a liberal donation is made by the legislature, to the contemplated improvements in the American Bottom, the two mill tax remaining untouched, and the common school system deprived of none of its means of support.

For the reasons given, the Auditor will be required to credit the relator with the State taxes he may have collected in townships one and two north, in ranges nine and ten west, in St. Clair county, and paid over to the treasurer of the company, deducting therefrom the two mill tax, and the tax levied for support of schools, for neither of which is the collector entitled to any credit, until they are paid into the treasury of the State.

With these qualifications, a peremptory mandamus will be awarded.

*Mandamus awarded.*