THE PEOPLE *ex rel.*

*v.*

JOSEPH B. BARGER, county clerk, etc.

1. CONSTITUTIONAL LAW—*exemption from taxation.* The first section of the ninth article of the charter of Shawneetown, in terms, purported to ex-

empt the inhabitants of that city from all State taxes for the period of twenty years, and required the levy of a tax, by the city, on the property of the inhabitants, equal to the tax released by the State, to be used exclusively in constructing a levee to protect the city from overflow: *Held,* that so far as the section exempted the property of the inhabitants from State taxes, it was clearly in conflict with the second section of the ninth article of the constitution of 1848, and therefore void.

2. SAME. The mere fact that the city council was authorized to levy a tax equal in amount to the State tax released, for local improvements, does not change the material fact of an attempt to release the right of the State to tax the inhabitants for State purposes; and the tax for levee purposes is in no sense a State tax.

3. SAME—*power of legislature to exempt.* Under the constitution of 1848, the legislature had not the power to exempt a portion of the inhabitants of the State in any locality from State taxes, and impose the entire burden upon the remaining portion.

4. SAME—*commutation of taxes.* The case of the *Illinois Central R. R. Co.* v. *County of McLean,* 17 Ill. 291, holding that a commutation of taxes in that case was constitutional, is based upon the principle that the proportion of the earnings of the company required to be paid to the State in lieu of taxes, was equal to the burden of the taxes released. The case can be supported on no other principle.

5. But when the State receives nothing in consideration for releasing the inhabitants of a city from State taxes, and the tax imposed in lieu thereof is purely for local purposes, in which the people of the State at large have no benefit, it can not be regarded as a commutation.

6. SAME—*exemption for charitable purposes.* The words " charitable purposes," in the third section of the ninth article of the constitution of 1848, which provides that " the property of the State and counties, both real and personal, and such other property as the general assembly shall deem necessary for schools, religious and *charitable purposes,* may be exempt from taxation," will not be construed to include the building and construction of a levee for the protection of the private property of the citizen. Under this clause, the right to collect a State tax in a locality can not be released for a series of years, and an equal tax collected to build a levee by a city in lieu thereof.

Mr. W. BUSHNELL, Attorney General, for the people.

Mr. A. D. DUFF, for the respondent.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The first section of article nine of the charter of Shawnee-

town, in terms, purports to exempt the inhabitants of that city from all State taxes for a period of twenty years. Private Laws 1861, p. 272.

The respondent, who is the county clerk of Gallatin County, acting under this law, refused to extend the State tax for the year 1871. It is claimed, on behalf of the relators, that this section of the city charter is in conflict with the constitution of the State, and therefore void. The object of this proceeding is to compel the respondent to extend the State tax for the year 1871 on the property of the inhabitants of said city.

The counsel for the respondent suggests two inquiries: first, does the charter, when tested by the fixed rules of interpretation and construction of statutes, exempt the inhabitants of the city of Shawneetown from taxation? And, second, if they are so exempted, is such exemption a plain and obvious violation of the constitution?

Reluctant as we always are to hold any law enacted by the general assembly to be unconstitutional, we feel constrained to return an affirmative answer to both of these questions.

The words used in the act under consideration, have no doubtful meaning, and if taken and considered in their ordinary and legal meaning, they will bear no two constructions. It is expressly provided that the "inhabitants of said city are hereby exempt from State tax for twenty years." The plain and obvious meaning of the words used is, that the State, by this act of the general assembly, undertook to release its right to tax the inhabitants of said city for State purposes for a period of twenty years. The terms used to express that intention are unambiguous, and if the general assembly possessed the constitutional power to create such exemption, they would doubtless be effective for that purpose.

It is conceded by counsel, that this section will bear this construction, unless its meaning is aided by the context. By the same section, the city council is authorized and required to levy annually a tax on the property of the inhabitants of said city equal in amount to the "tax which would have inured

to the State from time to time, had this exemption not been made;" which tax, when so levied and collected, it is provided, shall be exclusively used for the purpose of building a levee to protect the city from overflow.

We do not perceive how this provision changes the meaning of the words quoted from the first clause of the section, or gives any different view of the expression of the legislative will. The patent fact remains unchanged, that the legislature did, in fact, exempt the inhabitants of said city from all State taxes for a certain period, and did release its right to impose such tax for State purposes during that period.

The mere fact that the city council is authorized to levy a tax, equal in amount to the State tax, for the several years of the period named, for the purposes of local improvements, does not, and can not, change the meaning of the words used, or change the material fact that the State has attempted, through this act of the legislature, to release its right to tax the inhabitants of said city for State purposes for the entire period named.

The tax to be levied by the city council, under the provisions of this act for "levee purposes," is in no sense a State tax, and, by no fair construction, can it be made to stand in lieu of the State tax.

It is not in the power of the legislature to exempt a portion of the inhabitants of the State in any locality from State taxes, and impose the entire burden upon the remaining portion of the citizens. If the general assembly could exempt the minority from taxation for State purposes, they could, upon the same principle, exempt the majority, and thus a minority of the citizens might be made to bear the entire burden of the expenses of the State government.

The second section of the ninth article of the constitution of 1848, requires that the " general assembly shall provide for levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to his or her property."

It is insisted, for the purpose of avoiding this provision of the constitution, that, if the inhabitants of the city are ex-

empted from one tax, the State, by the same law, imposes another, equal in amount, upon the same people and property, and that this is a mere substitution of one tax for another. The case of the *Illinois Central Railroad Company* v. *The County of McLean,* 17 Ill. 291, is cited as sustaining this view of the law. The doctrine of that case does not aid the view of the law presented by the counsel for the respondent.

That case holds that it is within the constitutional power of the legislature to exempt property from taxation, or to commute the general rate for a fixed sum, and that the provision in the charter of the Illinois Central Railroad Company, exempting its property from taxation upon the payment of a certain portion of its earnings was constitutional. The case proceeds on the principle that the proportion of the earnings of the company to be paid to the State is equal to the burden of the State tax imposed on the citizens and other corporations in the State, which is thought to answer the requirements of the constitution, that " every person or corporation shall pay a tax in proportion to his or her property." The case can be supported on no other principle.

In the case at bar, the State received nothing in consideration for releasing the inhabitants of the city of Shawneetown from taxation, for State purposes, and hence the inhabitants do not pay a State tax in proportion to the value of their property. The tax imposed in lieu of the State tax is purely for local purposes, from which the citizens of the State at large derive no benefit whatever.

It is sought to sustain this section of the city charter on the ground that it is a mere appropriation of the State tax of the inhabitants of Shawneetown, for a period of years, to aid them in the construction of a levee, on the principle of the case of the *People ex rel.* v. *Miner,* 46 Ill. 384. We think this can not be done. In that case there was no attempt to suspend the levy of the tax for State purposes, and, in fact, it was actually levied and collected under the general revenue laws of the State, but it was held to be within the constitutional power of the legislature to stop the tax, *in transitu,* be-

fore reaching the State treasury, and to appropriate it to aid in the construction of certain improvements in the American bottom. The case at bar does not come within the letter or spirit of that decision.

Unless the exemption sought to be created in favor of the inhabitants of Shawneetown, by the first section of their charter, is authorized by the third section of the ninth article of the constitution of 1848, it is clearly in conflict with that instrument. That section provides, that "the property of the State and counties, both real and personal, and such other property as the general assembly shall deem necessary for schools, religious and charitable purposes, may be exempt from taxation." While it is true that the words "charitable purposes," as used in the constitution, may, have a very broad and comprehensive meaning, and may include provision for all classes of citizens, such as founding hospitals for the insane, the deaf and dumb, and the blind, and other kindred and humane institutions, we do not think they were intended to have as broad a meaning as that insisted upon by the counsel for the respondent. We are asked to extend the meaning of the words "charitable purposes" so as to make them include the building and construction of a levee for the protection of the private property of the citizen. This can not be done. We can not believe that the framers of the constitution of 1848 ever intended those words to have any such meaning, or to use them in the extended sense that the words "charitable uses" may sometimes have been used in the common law.

It has always been the doctrine of this court to presume in favor of the constitutionality of any law enacted by the general assembly, unless it is in plain and obvious conflict with the constitution.

In the present instance we think that the first section of the ninth article of the charter of the city of Shawneetown, which attempts to exempt the inhabitants of said city from State taxes, for a period of twenty years, is so clearly in conflict with the constitution of 1848, under which it was en-

acted, and therefore of no validity, that it becomes our imperative duty to award the peremptory writ of mandamus, to compel the respondent to extend the amount of the State tax for the year 1871, as prayed for in the petition filed herein, which is accordingly done.

*Peremptory writ of mandamus awarded.*