# RUFUS N. RAMSEY

## v.

## CHARLES HŒGER.

1. CONSTITUTIONAL LAW—*State prohibited from pledging its credit to those holding corporate indebtedness.* The act of April 16, 1869, entitled "An act to fund and provide for paying the railroad debts of counties, townships, cities and towns," does not constitute a contract between the State and the creditors of the counties, townships, cities and towns intended to be aided, for the reason that the constitution of 1848 prohibited the credit of the State from being given to or in aid of any individual, association or corporation.

2. SAME—*repeal of act of 1869 giving State taxes to municipalities owing railroad indebtedness.* Under the provisions of the constitution of 1870, and the revenue law in force July 1, 1873, so much of the act of 1869 to fund and provide for paying railroad debts of counties, townships, cities and towns, as requires the State revenue to be collected on the valuations of the taxable property in the State remaining, after deducting in counties, townships, etc., which have outstanding indebtedness incurred in aid of the construction of railroads, the increased valuation of the taxable property over that of the year 1868, is abrogated, and can not be enforced.

3. SAME—*exemption from State taxes without a consideration may be recalled at pleasure.* The tax-payers in counties, townships, etc., which had incurred debts in aid of railways, being liable for their just share of taxes for State purposes, and, in addition thereto, liable to be taxed for the payment of the debts of their county, township, etc., the act of 1869, by which they were exempted from the payment of State taxes on the valuation of property in excess of that for the year 1868, is to be regarded as a mere gratuity, without any consideration to the State; and the rule is that exemptions from taxation are always subject to be recalled when granted as a mere privilege and not for a sufficient consideration.

4. INJUNCTION—*of taxes levied in excess of that authorized by law.* Where the law provided for the levy and collection of a given sum upon the taxable property of the whole State, and required the Governor and Auditor to compute the separate rates per cent required to raise such sum; and it appeared that, in order to make up deficiencies caused by setting apart a portion of the State taxes to certain counties, townships, cities and towns, to be applied on their railroad indebtedness under the act of 1869, a greater rate per cent was levied in certain other counties than otherwise would have been required, it was *held*, that such excess was levied without authority of law, and that the collection of all taxes levied in excess of the proper and uniform rate should be enjoined.

This is an agreed case from the Circuit Court of Clinton county.

The only question arising in the case is fully presented by the following agreed state of facts, upon which the case was heard in the court below:

"1. That the counties, townships, cities and towns in the State of Illinois, named in the Railroad and Warehouse Commissioners' Report for 1873, have outstanding railroad bonds under the act entitled 'An act to fund and provide for paying the railroad debts of counties, townships, cities and towns,' in force April 16, 1869, registered with the Auditor of State, amounting to upwards of $16,000,000.

"2. That $10,000,000 of said bonds were registered in the Auditor's office since the 8th day of August, 1870. (The date the new constitution went into force.)

"3. That the act entitled 'An act to fund and provide for paying the railroad debts of counties, townships, cities and towns,' in force April 16, 1869, was never submitted to a vote of the people of the State.

"4. That the State tax levied by the Auditor for 1873, upon all the taxable property in the State of Illinois, exclusive of school taxes, etc., is 27 cents on the $100 valuation.

"5. That the equalized assessment for 1868, for State purposes, in the State of Illinois, amounted to $474,480,877, and in 1873 to $1,341,000,000—an increase over the assessment of 1868, in counties having registered railroad bonds under said act of 1869, of $320,000,000, and an increase in counties, etc., having no railroad bonds, of $546,519,123.

"6. That counties, etc., having registered railroad bonds under the act aforesaid, receive the benefit and credit of all State taxes, except school taxes, etc., paid by them (or by the citizens and property-holders of the same), over the assessment of 1868, for the sole and only purpose of paying off their registered railroad bonds.

28—76TH ILL.

" 7.    That under the act of April 16, 1869, aforesaid, the State tax for 1873, exclusive of school taxes, etc., to be placed to the credit of counties, townships, cities and towns having registered railroad bonds upon the increased assessment over that of 1868 of taxable property in the State of Illinois, amounts to $780,000.

" 8.    That counties, etc., having registered railroad bonds under the act aforesaid, will pay 27 cents less on the $100 valuation, for State purposes, on the increased assessment over that of 1868, except school taxes, towards the support of the State government and towards the liquidation of the State indebtedness, than counties, etc., having no registered railroad bonds.

" 9.    That the equalized assessment of 1873, in counties having no outstanding registered railroad bonds, has increased over that of 1868 $546,519,123, upon which the taxpayers of said counties will pay 27 cents more on the $100 valuation towards the liquidation of the legal State indebtedness and support of the State government, than counties, etc., having registered railroad bonds under the act of 1869, aforesaid.

" 10.    That the equalized assessment in Clinton county, Illinois, in 1868, for State purposes, amounted to $1,798,849, and in 1873 to $6,999,089—an increase of $5,200,240.

" 11.    That upon the increased equalized assessment of 1873 over that of 1868, the tax-payers of Clinton county, Illinois, have to pay the levy of 27 cents on the $100 valuation, for State purposes, exclusive of school taxes, etc., amounting in all to $14,040.64, more than counties, etc., having outstanding registered railroad bonds, upon the same amount of valuation.

" 12.    That, by reason of such increased assessment, the tax-payers of Clinton county, Illinois, for the year 1873, will pay, exclusive of school taxes, etc., $14,040.64 more for the liquidation of the legal State indebtedness and the support of the State government than counties of like property

valuation having outstanding registered railroad bonds under said act of 1869.

"13. That Clinton county, Illinois, nor any of her townships, cities or towns, have registered railroad bonds under said act of 1869 whatever.

"14. That Rufus N. Ramsey is a citizen and tax-payer of Clinton county, Illinois; that his State taxes for 1873, upon his taxable property, exclusive of school taxes, in said county, by reason of the operation of the act of April 16, 1869, aforesaid, have been increased, and he thereby has to pay $25 more than a citizen and tax-payer of counties, etc., having registered railroad bonds under said act of 1869, upon like valuation, towards the liquidation of the legal State indebtedness and the support of the State government.

"15. That said Ramsey has made a legal tender of all his taxes due, except the $25 aforesaid, which he refuses to pay; that Charles Hœger, the collector of Clinton county, Illinois, has refused to accept the same in full satisfaction; that he threatens to levy upon the personal property of said Ramsey, to satisfy the same, and that said Ramsey has enjoined the collection thereof."

Mr. G. Van Hoorebeke, for the plaintiff.

Mr. F. A. Lietze, for the defendant.

Mr. Justice Scholfield delivered the opinion of the Court:

The question is presented by this record whether, under the constitution and laws in force when the tax sought to be enjoined was levied, a higher rate of taxation can be imposed for State purposes, on taxable property in counties which have no outstanding indebtedness incurred in aid of the construction of railroads, than is imposed on taxable property in counties which have such indebtedness.

That the tax levied by the act in force July 1, 1873, has been so apportioned, is admitted by both parties; and it is

claimed by the appellee to be justified by the provisions of an act in force April 16, 1869, entitled "An act to fund and provide for paying the railroad debts of counties, townships, cities and towns."

The only sections of this act bearing on the question are the first, fourth, fifth and ninth, which are as follows:

"SEC. 1. Whenever any county, township, incorporated city or town, shall have created a debt which still remains unpaid, or shall create a debt under the provisions of any law of this State, to aid in the construction of any railway or railways, that shall be completed within ten years after the passage of this act, whose line shall run near to, or into or through said county, township, city or town, it shall be lawful for the State Treasurer, and he is hereby required, immediately upon receiving the revenue of each year, to place to the credit of such county, township, city or town so having incurred such indebtedness, in the State treasury, annually, for and during the term of ten years, all the State taxes collected and paid into the State treasury on the increased valuation of the taxable property of said county, township, city or town, as shown by the annual assessment rolls, over and above the amount of the assessment roll of the year 1868, excepting the State school tax and the two-mill tax provided for by the constitution of this State for the payment of the State debt; and whenever any county, township, city or town shall have created a debt as aforesaid, it shall also be lawful for the collector of taxes, and he is hereby required, annually, for and during the term of ten years, to pay into the State treasury all the taxes collected, for any purpose whatever, on the assessment of the railroad or railroads for whose aid the said debt was incurred, including the road bed and superstructure, and all fixtures and appurtenances thereof, the locomotives, cars, machinery and machine shops, depots, and all other property, real and personal, of said railway company, within such county, township, city or town; and immediately upon receiving the same, the State Treasurer

shall place to the credit of such county, township, city or town, in the State treasury, the whole amount so received, except the State school tax and the two-mill tax provided by the constitution of this State for the payment of the State debt; and it shall be the duty of said collector of taxes to furnish the State Auditor a separate and detailed account of the amount of taxes collected from said railway or railways, at the time of his annual settlement with the State Auditor; and the State Treasurer shall give to said collector separate receipts for the respective amounts paid into the State treasury to the credit of said county, and said receipts shall be taken and received by the county court, or other legal authorities, as vouchers for the amount collected on account of the county and local assessments on said railroad property, in the annual settlement with such collector; and the several amounts of money in this section provided and ordered to be placed to the credit of such county, township, city or town, shall be applied by the State Treasurer to the payment of the bonded railroad debt of such county, township, city or town, as hereinafter provided."

"Sec. 4. When the bonds of any county, township, city or town shall be so registered, the State Auditor shall annually ascertain the amount of interest for the current year due and accrued and to accrue upon such bonds, and from the amount so ascertained, he shall deduct the amount in the State treasury placed to the credit of such county, township, city or town, as herein provided and directed; and from the basis of the certificate of valuation of property heretofore provided to be transmitted to him, or in case no such certificate shall be filed in his office, then upon the basis of the total assessment of such county, township, city or town, for the year next preceding, he shall estimate and determine the rate per centum on the valuation of property within such county, township, city or town requisite to meet and satisfy the amount of interest unprovided for, together

with the ordinary cost to the State of collection and disbursement of the same, to be estimated by the Auditor and Treasurer, and shall make and transmit to the county clerk of such county, òr to the officer or authority whose duty it is or shall be to prepare the estimates and books for the collection of State taxes in such county, township, city or town, a certificate, stating such estimated requisite per centum for such purpose, to be filed in his office; and the same per centum shall thereupon be deemed added to, and a part of the per centum which is or may be levied or provided by law for purposes of State revenue, and shall be so treated by such clerk, officer or authority, in making such estimates and books for the collection of taxes; and the said tax shall be collected with the State revenue, and all laws relating to the State revenue shall apply thereto, except as herein otherwise provided.

"SEC. 5. The State shall be deemed the custodian only of the several taxes so collected and credited to such county, township, city or town, and shall not be deemed in any manner liable on account of any such bonds, but the tax and funds so collected shall be deemed pledged and appropriated to the payment of the interest and principal of the registered bonds herein provided for, until fully satisfied. The State shall annually collect and apply all the said taxes and funds placed to the credit of such county, township, city or town for and during the term of eight years, to the payment of the annual interest on such registered bonds of such county, township, city or town, in the same manner as interest on the bonds of the State is or may be collected and paid, but in like moneys as shall be receivable in payment of State taxes; and for and during the remainder of the term of years during which said registered bonds shall remain unpaid, the funds provided in Sec. 1 of this act, accruing from taxes collected from the property of said railroad or railroads, and the surplus, if any, of the other funds in this act provided, remaining after the payment of the interest on the bonds, shall be applied to the

payment of the principal of said registered bonds on presentation at the State treasury; or the Treasurer shall purchase the same in open market, at not more than par; and upon such payment or purchase of the said bonds, the amount paid upon the principal of said bonds shall be indorsed thereon, and receipts therefor shall be taken and filed in the office of the State Treasurer, and the interest coupons or bonds, when fully paid, shall be returned to the office of the State Treasurer, and shall be canceled and destroyed in the same manner as those appertaining to the State debt; and the fund derived from the taxes collected on the increased assessment over the year 1868, and the tax levied to meet the interest on said registered bonds, shall continue to be annually applied to the interest of said bonds; and the said taxes and funds required in this act to be placed to the credit of counties, townships, cities and towns, shall be applied by the State Treasurer to the payment of the registered railroad bonds of such county, townships, cities or towns, equally and without discrimination."

"SEC. 9.   And the State Auditor, from the total value of all the property in the State, after the same shall have been equalized, in accordance with the provisions of 'An act to amend the revenue laws, and to establish a State Board of Equalization of Assessments,' approved March 8, 1867, shall deduct the amount of said increased valuation of the taxable property, above the valuation of the year 1868, in such counties, townships, incorporated cities and towns as may be entitled to the benefits of this act, and the taxes upon which are herein directed to be credited to counties, townships, cities and towns, and upon the amount remaining he shall cause to be collected such a per cent as shall be sufficient to pay the appropriations and other demands upon the treasury due to the end of each fiscal year; and the same per cent shall also be collected on the said increased valuation above the valuation of 1868, and applied as herein provided."

It can not be held, as insisted by the counsel for appellee, that this statute constitutes a contract between the State and the creditors of the counties, townships, cities and towns intended to be aided, for the plain reason that the legislature was prohibited from making such a contract by section 38 of article 3 of the constitution of 1848, which declares, "the credit of the State shall not in any manner be given to or in aid of any individual, association or corporation." It is impossible to say that such creditors can have a claim upon the State, unless its credit was in some manner given to or in aid of them; nor can we conceive how there can be a vested right in that which can not be granted.

The necessary effect of the act was to exempt tax-payers in the counties, townships, cities and towns availing of its provisions, from the payment of so much of the State tax as is appropriated to the particular counties, townships, cities or towns. The debts in aid of which the appropriation is made are local only. *Dunnovan et al.* v. *Green*, 57 Ill. 63. They are created by municipal authority for what are, at least theoretically, municipal purposes, and, therefore, for a sufficient consideration received by the municipality. It is upon this hypothesis alone that such corporations have been held to possess power to subscribe for shares of capital stock in railroad companies, and incur indebtedness to pay the subscription. *Prettyman* v. *Supervisors of Tazewell County*, 19 Ill. 406; *Roberts* v. *City of Rockford*, 21 id. 457; *Johnson* v. *County of Stark*, 24 id. 85.

It can not be denied that at the date of this enactment the State possessed power to require that full and equal taxation should be levied, for State purposes, upon all the taxable property in the State, without regard to the indebtedness of the particular counties, townships, cities and towns favored by the act; and since the tax-payer is, aside from the act, liable to be taxed for the payment of the debts of the county, township, city or town in which his property is subject to taxation, it can not be said that the State has received any

consideration for the exemption granted by the act. We can not, then, otherwise regard the exemption from State taxation. as contemplated by the act, than as a mere gratuity, the continuance of which rested in the pleasure of the legislature and the sovereign power of the State.

No doubt many persons have been, through a misapprehension of its proper construction and effect, induced to vote to incur indebtedness by particular counties, townships, cities and towns, to a greater extent than they otherwise would; but we can perceive no difference between their condition and that of the individual who, relying on the continuance of the bounty of a friend or relative, contracts debts which the subsequent withdrawal of that bounty leaves him to pay from his own limited resources.

The rule is, that exemptions from taxation are always subject to be recalled when they have been granted as a mere privilege and not for a sufficient consideration. Cooley's Const. Limitations, 383.

It is manifest, therefore, that a system of taxation, enforced either by a new constitution or by an act of the General Assembly, inconsistent with the provisions of this act, would necessarily, to that extent, render it inoperative, although there might be no professed design to repeal it. *Hills* v. *Chicago*, 60 Ill. 86.

It is argued, that it was not intended by those who framed the present constitution to repeal any of the provisions of the act of 1869 ; that it was only intended to ordain a revenue system which should apply to the future. This may be so, yet, if the language of that instrument is clear and free from ambiguity or doubt, it must control, whatever may have been the design of those by whom it was framed. Cooley's Const. Limitations, 69.

If it shall be conceded that the revenue system which it contains was not self-executing, but that it required legislation to put it in force, still it can not be denied that when the General Assembly did, subsequent to its adoption, enact a

revenue system, such system was required to conform to its provisions. It surely can not be claimed that, under the guise of enacting laws to give effect to the provisions of a constitution, principles can be perpetuated in diametrical opposition to those provisions. *Hills* v. *Chicago, supra.*

The present constitution contains the following:

"SEC. 6, ART. 9. The General Assembly shall have no power to release or discharge any county, city, township, town or district whatever, or the inhabitants thereof, or the property therein, from their or its proportionate share of taxes to be levied for State purposes, nor shall commutation for such taxes be authorized in any form whatsoever."

And section 1 of the same article requires the General Assembly "to provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property."

The language of these sections is so clear and unambiguous that there can be no necessity of resorting to the debates of the constitutional convention to ascertain their plain, obvious and natural meaning.

The tax involved in the present suit is levied by virtue of an act in force July 1st, 1873, which is as follows:

"There shall be raised, by levying a tax by valuation upon the taxable property in this State, the following sums for the purposes hereinafter set forth—

"For general State purposes, to be designated 'Revenue fund,' $2,500,000, upon the assessed value of 1873, and $1,500,000 annually thereafter; for State school purposes, to be designated 'State school fund,' (in lieu of the two-mill tax therefor,) $1,000,000 annually.

"SEC. 2. The Governor and Auditor shall, annually, compute the separate rates per cent required to produce not less than the above amounts, any thing in any other act providing a different manner of ascertaining the amount of revenue

required to be levied for State purposes, to the contrary notwithstanding; and when so ascertained, the Auditor shall certify to the county clerks the proper separate rates per cent therefor, and also such definite rates for other purposes as are now or may hereafter be provided by law, to be levied and collected as State taxes."

This tax is levied on all the taxable property in the State, and it is not admissible, either under the language of the act or of the constitution, that of the proportional amount of each tax-payer, as determined with reference to such valuation, in some counties, townships, cities and towns he shall only be required to pay one-half, or one-third, while in other counties, townships, cities and towns he shall be required to pay that much more.

The duties of the Governor and Auditor, in respect to this levy, were purely ministerial. They had no authority to do more than compute the separate rates per cent required to produce the amount of the levy, and when this was done, and the result certified by the Auditor to the county clerks, there was no authority in the law, or under the constitution, to extend it otherwise than equally, upon all taxable property, in proportion to its value, as ascertained and determined by those upon whom the law imposed the duty of assessing it.

The fourth section of the act of 1869, it will have been observed, requires the Auditor and Treasurer, after ascertaining the deficiency in the amount necessary to pay the interest upon the indebtedness of any county, township, city or town, incurred in aid of the construction of railroads, for the current year, after deducting the sum which may have been received for that purpose under section 1, to estimate and determine the rate per centum on the valuation of property within such county, township, city or town, required to meet and satisfy the amount of interest unprovided for, together with the ordinary cost to the State of collection and disbursement of the same, to be estimated by the Auditor and Treasurer, and shall make and transmit to the county clerk of such

county, * * a certificate stating such estimated requisite per centum for such purpose, to be filed in his office; and the same per centum shall thereupon be deemed added to and a part of the per centum which is or may be levied or provided by law for purposes of State revenue, and shall be so treated by such clerk, etc. This clearly authorizes the levy and collection of the amount necessary to supply the deficiency in the payment of the interest due upon the indebtedness of such counties, townships, cities and towns, incurred in aid of the construction of railroads, as State revenue, but it is expressly limited to the county, township, city or town by which the particular indebtedness is incurred. And, so far as the last clause of section 2 of the act in force July 1st, 1873, can have any reference to the act of 1869, it must relate to this section. It certainly confers no authority to extend a tax levied for the purpose of paying municipal indebtedness incurred by one county, township, city or town, upon the taxable property of a different county, township, city or town; nor does it authorize the $3,500,000 to be apportioned otherwise than equally upon the assessed value of all the taxable property in the State.

No words that we can conceive can add force or precision to the language of the constitution before quoted, that " the General Assembly shall have no power to release or discharge any county, city, township, town or district whatever, or the inhabitants thereof, or the property therein, from their or its proportionate share of taxes to be levied for State purposes." Even the General Assembly, which levied the present tax, derived its existence from the provisions of the same constitution; and if this provision was not binding upon it, it is impossible to conceive that it ever can have any obligatory force. It is impossible for us to escape the conclusion that, under the constitution and law now in force, so much of the act of 1869 as requires the State revenue to be collected on the valuations of the taxable property in the State remaining after deducting, in counties, townships, cities and towns which

have outstanding indebtedness incurred in aid of the construction of railroads, the increased valuation of the taxable property over that of the year 1868, is abrogated, and can not be enforced.

The same question, substantially, as that presented by the present case was before this court, in *People ex rel. Kaskaskia Navigation Co.* v. *Lippincott,* 65 Ill. 548, and the views here expressed are in harmony with what was there said. *

We forbear the expression of any opinion as to whether so much of the $3,500,000 actually and legally levied for State purposes, as shall be collected from the increased valuation over that of 1868, which is claimed to be appropriated to the particular counties, townships, cities and towns, can be maintained as a standing appropriation, as that question is not now before us.

The decree of the court below is reversed and the cause remanded, with directions to that court to ascertain the rate per cent required to produce the sum levied by the act in force July 1, 1873, for State purposes, and to enjoin the collection of all State taxes levied on the property of appellee in excess of that rate.

*Decree reversed.*

Mr. Justice Scott, dissenting.