[No. 49835-1. En Banc. November 21, 1984.]

RICHARD M. BOND, ET AL, *Appellants,* v. DONALD R. BURROWS, *Respondent.*

154

*Michael P. Farris,* for appellants Bond, et al.

*Jeff Campiche, Prosecuting Attorney for Pacific County,* and *Sherrie Bennett Campiche,* for appellants Campiche, et al.

*Kenneth O. Eikenberry, Attorney General, Leland T. Johnson, Senior Assistant,* and *Jeffrey D. Goltz* and *James*

*R. Tuttle, Assistants,* for respondent.

DORE, J.—We hold that RCW 82.04.2902(1) and (2) are unconstitutional as violating Const. art. 11, § 9. We further hold that the 6.5 percent state sales tax enacted during the 1983 legislative session shall uniformly be applied and collected in all counties of the state of Washington prospectively commencing on January 1, 1985.

In 1983, the Washington Legislature increased the retail sales tax rate from 5.4 percent to 6.5 percent, except in "border" counties. Border counties are defined as:

> (1) Those counties physically bordering on or included within a standard metropolitan statistical area, as determined by the United States census bureau, located wholly or partially in a state which does not impose a retail sales tax; and
>
> (2) Those counties physically bordering both on a state which does not impose a retail sales tax and a county specified in subsection (1) of this section but lying to the east of the counties specified in subsection (1) of this section.

RCW 82.04.2902(1) and (2). Under subsection (1), the counties of Clark, Cowlitz and Skamania are included. Under subsection (2), Klickitat County is the county defined.

The tax law was proposed to alleviate the problem of Washington residents crossing over the Oregon border and purchasing goods in the Portland area to avoid the Washington state retail sales tax, and to raise revenue. *See Impact of Washington Taxes on Border Areas,* Dep't of Rev. Rep. (March 9, 1982), submitted pursuant to Senate resolution 1981–162. The law, as passed, offset the decrease in sales tax with an increase in the business and occupation tax paid by border counties. Laws of 1983, ch. 7, § 5, p. 169. Though the increase in the business and occupation tax was vetoed by Governor Spellman, it was subsequently reen-

acted. Laws of 1983, 2d Ex. Sess., ch. 3, § 4, p. 2163.

In April of 1983, plaintiffs Richard M. Bond, et al (citizens, residents, and taxpayers in the following counties: Spokane, Skagit, Franklin, Whitman, Snohomish, Kittitas, Chelan, Whatcom and Lewis) brought a complaint for declaratory and injunctive relief against defendant Department of Revenue, requesting: (1) those sections of the law imposing the rate of taxation at a higher rate in 35 counties than the remaining 4 to be declared unconstitutional on their face and rendered void; (2) a temporary and permanent injunction prohibiting enforcement of the act and the collection of the 1983 sales tax increase in any county; and (3) further equitable relief in lieu of damages for the collection of the tax from the period since its effective date, March 1, 1983, to final order. In June of 1983, plaintiff intervenors Valera Campiche, et al, representing retail business operators, residents, taxpayers, and municipal corporations of Pacific and Wahkiakum Counties, were granted leave to intervene. Plaintiffs and defendant then brought cross motions for summary judgment. Plaintiff intervenors agreed to be bound by any court order.

In July of 1983, the trial court ruled the sales tax rate differential for the three border counties defined by RCW 82.04.2902(1) was constitutional. It further held that RCW 82.04.2902(2), which defines those counties "lying to the east" (Klickitat), is unconstitutional and severable from the act. All parties appealed and direct review was accepted. Subsequently, plaintiff intervenor Wahkiakum County withdrew.

Plaintiffs and plaintiff intervenors assert that the trial court erred in upholding the constitutionality of a retail sales tax differential of 1.1 percent in Clark, Cowlitz and Skamania Counties. Defendant argues the trial court erred in declaring the application of the act to Klickitat County to be unconstitutional and severable.

Const. art. 11, § 9

■■ One fundamental premise pervades the constitu-

tional limitations on the exercise by the Legislature of the power of taxation. This premise is that the distribution of the burdens of taxation should be uniform. *See* Const. art. 2, § 28(5), (10); Const. art. 7, § 1 (amend. 14); and Const. art. 11, § 9. While the taxing authority is free to impose different tax burdens on different classes, the rule requires that taxation of a class shall be uniform within the limits of the authority levying the tax. A tax levied for state purposes shall be uniform throughout the state; a tax levied for county purposes shall be uniform throughout the county; and so on. *See Black v. State,* 67 Wn.2d 97, 406 P.2d 761 (1965); *Morrow v. Henneford,* 182 Wash. 625, 47 P.2d 1016 (1935); *State v. Hart,* 125 Wash. 520, 217 P. 45 (1923). *State ex rel. Mason Cy. Logging Co. v. Wiley,* 177 Wash. 65, 31 P.2d 539 (1934); *State ex rel. Atwood v. Wooster,* 163 Wash. 659, 2 P.2d 653 (1931).

Here, the Legislature has ignored this fundamental principle by approving the imposition of a nonuniform state sales tax, relieving four counties of their proportionate share of state taxes. In so doing, the Legislature has ignored the language of Const. art. 11, § 9. This provision sets forth one principle of uniformity beyond all possibility of doubt:

> No County, nor the inhabitants thereof, nor the property therein, shall be released or discharged from its or their proportionate share of taxes to be levied for state purposes, nor shall commutation for such taxes be authorized in any form whatever.

As far as language can express the intention, uniformity within a class is mandated by this provision; no county nor its inhabitants shall be released or discharged from their proportionate share of the tax burden imposed by the State. Thus, in *Vance Lumber Co. v. King Cy.,* 184 Wash. 402, 51 P.2d 623 (1935), we held that a taxing statute, which acts uniformly upon each of the several counties of the state and which requires any losses of state tax revenues to be borne by the counties, not to violate Const. art. 11, § 9.

Const. art. 11, § 9 has as its antecedent article 9, section

6 of the Illinois State Constitution of 1870. *See generally* Knapp, *The Origin of the Constitution of the State of Washington,* 4 Wash. Hist. Q. 227 (1913). Probably the most telling words regarding the intent of the constitutional framers is from the debates of the Illinois constitutional convention. "[I]t was the intention of the Committee on Revenue . . . to provide against a dangerous species of legislation . . . the practice, under various pretexts, of exempting districts of the State, portions of counties . . . from proportional burden of State taxes, . . ." 2 *Debates and Proceedings of Constitutional Convention of State of Illinois* 1279 (1870).

The defendant urges this court to uphold the tax differential between the counties by reasoning that the border counties were not "released or discharged" because the sales tax increase was not imposed on them. The defendant contends that if the tax was never imposed, then it could not be released or discharged. The flaw in this reasoning is that it ignores two other phrases in Const. art. 11, § 9: first, the section says that there can be no release or discharge from taxes "to be levied"; second, the section also says that "nor shall commutation . . . be authorized in any form whatever." The words "to be levied" contemplate that the constitutional prohibition of discriminatory taxation applies not only to taxes which have already been levied but also to taxes which are to be levied in the future. Further, disproportionate assessment is a form of commutation of taxes, whereas the constitution was meant to require uniformity among the counties of the state. It is unthinkable that the framers of our constitution intended to prohibit the release or discharge of some county or counties of the state from a tax already levied, but to permit exactly the same result by the clever device of initially building the tax discrimination into the statute.

The Illinois decisions interpreting the Illinois constitutional provision on which ours is patterned provide convincing support for our interpretation. The Supreme Court of Illinois, in *Raymond v. Hartford Fire Ins. Co.,* 196 Ill.

329, 340, 63 N.E. 745 (1902), had the following to say concerning the "commutation" clause:

We do not mean to say that the last clause of section 6, forbidding commutations of State taxes in any form, has no broader significance than the first clause forbidding the release or discharge of any district of the State, or its inhabitants or property, from its or their proportionate share of State taxes, but only that that was deemed a form of commutation and a prevalent evil chiefly intended to be guarded against. (See Debates Const. Conv. 1198.) *We are of the opinion, however, that a construction of this section would not be authorized which would permit commutations of State taxes in some other form than the one most prevalent when the constitution was adopted.* The power to commute State taxes existed under the constitution of 1848, (*Illinois Central Railroad Co. v. McLean County,* 17 Ill. 291,) but that instrument did not contain the express prohibition embodied in the constitution of 1870. This clause forbids commutations of State taxes in any form whatsoever, and it should not be shorn of its meaning and beneficial operation by judicial construction. *It was the substance, and not the mere form, of the evil which was intended to be guarded against.*

(Italics ours.)

The same court had earlier held unconstitutional a legislative enactment which exempted by town charter the inhabitants of Shawneetown from state taxation for 20 years and, instead, required the City to levy for local purposes a tax which would have inured to the State from time to time, had this exemption not been made. *People ex rel. v. Barger,* 62 Ill. 452 (1872). The court reasoned that the State received nothing for its taxes and that the inhabitants were not made to pay a state tax in proportion to the value of their property. The court distinguished the case from *People ex rel. Becker v. Miner,* 46 Ill. 384 (1868), which authorized a diversion of state taxes after they were collected:

It is not in the power of the legislature to exempt a portion of the inhabitants of the State in any locality from State taxes, and impose the entire burden upon the

remaining portion of the citizens. If the general assembly could exempt the minority from taxation for State purposes, they could, upon the same principle, exempt the majority, and thus a minority of the citizens might be made to bear the entire burden of the expenses of the State government.

*Barger,* at 455.

Another early Illinois case turned upon the provisions of an act in relation to the railroad debts of municipalities. *Ramsey v. Hoeger,* 76 Ill. 432 (1875). The court in *Ramsey* noted that the necessary effect of the act was to exempt taxpayers in the counties, townships, cities and towns availing of its provisions from the payment of so much of the state tax as was appropriated to the particular counties, townships, cities, or towns. The state received no consideration for the exemption granted by the act. The court held that the act was abrogated by the 1870 Illinois State Constitution. The court reasoned that a state tax must be levied on all taxable property in the state, and is not admissible of different rates of taxation based upon county, township, city or town. *Ramsey,* at 443.

In another early case, the taxes on certain real estate in Randolph County were, by a special act of the Legislature, appropriated and applied for the benefit of the Kaskaskia River Navigation Company for the purpose of making a local improvement. *People ex rel. Kaskaskia River Nav. Co. v. Lippincott,* 65 Ill. 548 (1872). Real estate owners, therefore, actually paid no state taxes, but instead paid the amounts of such taxes toward the making of a local improvement. The court, in *Lippincott,* looked upon the act as a form of commuting state taxes and, therefore, repugnant to the provision of the constitution. *See also Board of Educ. v. Haworth,* 274 Ill. 538, 113 N.E. 939 (1916).

The foregoing cases are persuasive authority for our construction of Const. art. 11, § 9. They irrefutably demonstrate that Const. art. 11, § 9 is not only concerned with discriminatory release from a tax system already in exis-

tence, but also requires that each county of the state pay its proportionate share of taxes to be levied for state purposes. It would be incongruous indeed for the framers of our constitution to prohibit the Legislature from releasing a county of its proportionate share of a tax and, at the same time, allow the Legislature to achieve the same result via a legislative tax increase only applicable to some counties. It is the substance, and not the mere form, of the evil which was intended to be guarded against when the framers of our constitution enacted Const. art. 11, § 9.

The Legislature's enactment of the new sales tax structure patently violates the constitutional rule of proportionality (Const. art. 11, § 9). RCW 82.04.2902(1) and (2) are unconstitutional and, thus, null and void.

### STATEWIDE TAX RATE

The effect of this decision is an increase in the retail sales tax rate in the "border counties" from 5.4 percent to 6.5 percent.

■ This conclusion is triggered not strictly by the unconstitutionality of RCW 82.04.2902(1) and (2), but by the invalidation of the proviso to RCW 82.08.020(1), which establishes the border county tax differential. RCW 82.08-.020(1) provides:

> (1) There is levied and there shall be collected a tax on each retail sale in this state equal to six and five–tenths percent of the selling price: *Provided,* That for retail sales other than retail sales of telephone services, as defined in RCW 82.04.065, such tax shall be levied and collected in border counties in an amount equal to five and four–tenths percent of the selling price.

Laws of 1983, 2d Ex. Sess., ch. 3, § 41, p. 2188.[1] The severability clause in chapter 3, section 66, page 2200 provides:

---

[1]That same law also increased the business and occupation tax in the border counties. Laws of 1983, 2d Ex. Sess., ch. 3, § 4. Because that increase is so intertwined with the sales tax decrease, it too is invalid and shall be so regarded as of the same date as that herein determined for the invalidation of the sales tax differential for the border counties. *See, e.g., Hall v. Niemer,* 97 Wn.2d 574, 582, 649 P.2d 98 (1982).

> If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provision to other persons or circumstances is not affected.

A "provision" is not synonymous with "section". *Fain v. Chapman,* 94 Wn.2d 684, 619 P.2d 353 (1980). This court and others have saved general taxing provisions modified by a proviso, later held unconstitutional, which has granted a release or exemption from taxes. *Nathan v. Spokane Cy.,* 35 Wash. 26, 76 P. 521 (1904). *Accord, Kalian v. Langton,* 96 R.I. 367, 192 A.2d 12 (1963); *People ex rel. Holland Coal Co. v. Isaacs,* 22 Ill. 2d 477, 176 N.E.2d 889 (1961).

While the severability clause is "'not an inexorable command'", *Hall v. Niemer,* 97 Wn.2d 574, 584, 649 P.2d 98 (1982) (quoting *Dorchy v. Kansas,* 264 U.S. 286, 290, 68 L. Ed. 686, 44 S. Ct. 323 (1924)), there seems little doubt the Legislature would have enacted the higher rate of 6.5 percent as the statewide retail sales tax rate.

These authorities and the existence of the severability clause by themselves allow the court to conclude that the Legislature would have preferred a uniform, statewide sales tax rate of 6.5 percent from the effective date of RCW 82.08.020(1), March 1, 1983.

That the Legislature intended this result is further evidenced by enactment of RCW 82.08.020 by Laws of 1983, 2d Ex. Sess., ch. 3, § 62, p. 2199. Section 62 provides for a uniform statewide sales tax rate of 6.5 percent, but only on the contingency that

> (i) A temporary or permanent injunction or order becomes effective which prohibits in whole or in part the collection of taxes at the rates specified in section 6, chapter 7, Laws of 1983; or
> (ii) A decision of a court in this state invalidating in whole or in part section 6, chapter 7, Laws of 1983, becomes final.

Laws of 1983, 2d Ex. Sess., ch. 3, § 67(f), at 2201.

Although this contingency provision refers to the initial enactment of the differential retail sales tax, and not the amended version of the second extraordinary session, it

clearly indicates that if the tax differential was to be held unconstitutional, the result would be the imposition of a statewide retail sales tax rate of 6.5 percent.

PROSPECTIVE OPERATION

We find it appropriate to give this ruling prospective application only.

██ In recent years, the United States Supreme Court has, on several occasions, held civil legislation unconstitutional and then given only prospective effect to its holding in order to avoid imposing undue administrative or financial burdens on agencies of local government. *See Lemon v. Kurtzman,* 411 U.S. 192, 36 L. Ed. 2d 151, 93 S. Ct. 1463 (1973); *Phoenix v. Kolodziejski,* 399 U.S. 204, 26 L. Ed. 2d 523, 90 S. Ct. 1990 (1970); *Cipriano v. Houma,* 395 U.S. 701, 23 L. Ed. 2d 647, 89 S. Ct. 1897 (1969). The prospective effect the Court gave to its holding on the unconstitutionality of the broad jurisdiction of bankruptcy courts is another example. *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 73 L. Ed. 2d 598, 102 S. Ct. 2858 (1982).

Even prior to these developments, this court in *State ex rel. State Fin. Comm. v. Martin,* 62 Wn.2d 645, 384 P.2d 833 (1963) gave prospective operation only to an interpretation of a constitutional debt limitation which, if given retroactive application, would have made prior municipal bonds invalid.

Similarly, in cases holding that state taxes or assessment procedures were unconstitutional, numerous state courts have directed that their holdings should have only prospective effect. *E.g., Southern Pac. Co. v. Cochise Cy.,* 92 Ariz. 395, 377 P.2d 770 (1963); *Deltona Corp. v. Bailey,* 336 So. 2d 1163 (Fla. 1976); *Strickland v. Newton Cy.,* 244 Ga. 54, 258 S.E.2d 132 (1979); *Kansas City Millwright Co. v. Kalb,* 221 Kan. 658, 562 P.2d 65 (1977); *Jacobs v. Lexington–Fayette Urban Cy. Gov't,* 560 S.W.2d 10 (Ky. 1977); *Salorio v. Glaser,* 93 N.J. 447, 461 A.2d 1100 (1983); *Soo Line R.R. v. State,* 286 N.W.2d 459 (N.D. 1979); *Perkins v.*

*County of Albemarle,* 214 Va. 416, 200 S.E.2d 566 (1973); *Gottlieb v. Milwaukee,* 33 Wis. 2d 408, 147 N.E.2d 633 (1967).

These state decisions primarily rely on the great financial and administrative hardship that would be entailed if retroactive effect were allowed, and the taxpayers' or tax authorities' justifiable reliance on a statute which is presumptively constitutional.

To the objection that an unconstitutional statute is void from its inception, the New Jersey Supreme Court noted the importance of recognizing "that we are acting within the framework of appropriate equitable relief with respect to an unconstitutional taxation statute . . ." *Salorio,* at 463. In fashioning an equitable remedy, reliance interest weighs heavily, and the court should seek a blend of what is necessary, fair and workable. *Salorio,* at 464. *See also Lemon,* at 200–03.

Retailers within the border counties and the Department of Revenue have relied on the provisions of RCW 82.04-.2902(1) and (2) since its effective date, March 1, 1983. The liability for the payment of a retail sales tax is upon the buyer, with the duty to collect and remit to the Department of Revenue upon the seller. RCW 82.08.050; *Murray v. State,* 62 Wn.2d 619, 623, 384 P.2d 337 (1963); *Kaeser v. Everett,* 47 Wn.2d 666, 667, 289 P.2d 343 (1955). It would be practically impossible for the border county retailers to collect the tax on transactions occurring prior to this opinion.

Retroactive application of the present decision would impose a substantial hardship on the retailers in the border counties. We will not impose such a burden upon the retailers that cannot legally be passed on to the buyers.

On the basis of the circumstances and equities of this case, the foregoing considerations and authorities persuade us of the appropriateness of prospective effect to our holding that RCW 82.04.2902(1) and (2) are unconstitutional.

CONCLUSION

We hold that RCW 82.04.2902(1) and (2) are unconstitutional. The statewide retail sales tax rate is 6.5 percent, and shall be uniformly applied and collected in all counties of the state prospectively commencing on January 1, 1985.

WILLIAMS, C.J., ROSELLINI, UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

After modification, further reconsideration denied December 13, 1984.