[No. 55810–8.   En Banc.   July 13, 1989.]

ALLIS–CHALMERS CORPORATION, *Respondent,* v. THE CITY OF NORTH BONNEVILLE, *Appellant.*

*James J. Mason,* for appellant.

*Bogle & Gates,* by *D. Michael Young* and *Franklin G. Dinces,* for respondent.

BRACHTENBACH, J.—The primary issue is the constitutionality of the City of North Bonneville's business and occupation tax. The trial court held the tax unconstitutional as violative of the commerce clause. We affirm.

In 1976 the United States Army Corps of Engineers contracted with Allis–Chalmers Corporation (Allis–Chalmers) to purchase eight turbines for installation in the second power house at Bonneville Dam. The turbines were manufactured in Pennsylvania.

North Bonneville sought to tax Allis–Chalmers on the sale of the turbines, pursuant to North Bonneville ordinance 285,[1] which provided for a gross receipts tax on sales within the City. Section 28 of the ordinance provided an exemption from the gross receipts tax to local manufacturers who manufactured and sold their goods within the city. Such manufacturers were subject to a separate tax on the value of the goods manufactured.

North Bonneville's city clerk informed Allis–Chalmers of its business and occupation (B&O) tax, and, on September 27, 1983, the city administrator sent a letter to Allis–Chalmers assessing a total tax due of $235,385, including penalties and interest. The tax was assessed against the total sales price of the turbines. Allis–Chalmers maintained, however, that it was not subject to the tax.

In October 1983, Allis–Chalmers requested a hearing by the City Council, as permitted by ordinance 285, § 46. North Bonneville scheduled a hearing, but delayed it at Allis–Chalmers' request. On September 11, 1984, Allis–Chalmers' appeal to the council was finally heard without an oral hearing. North Bonneville denied the appeal.

In July 1984, ordinance 285 was amended by ordinance 542, which deleted the proviso in section 28 of ordinance 285 which had granted the exemption from the gross receipts tax to local manufacturers selling their goods within the boundaries of North Bonneville.

On August 27, 1984, Allis–Chalmers brought this suit against North Bonneville, alleging that ordinance 285 in

---

[1]As noted in this opinion, ordinance 285 has been changed by North Bonneville ordinance 542. References herein are to ordinance 285 as it existed prior to passage of ordinance 542. The pertinent portions of ordinance 285 are set out *infra.* Ordinance 542 is set out in the appendix.

general and sections 26 and 28 in particular are unconstitutionally discriminatory under the commerce clause. Allis–Chalmers sought a declaratory judgment that North Bonneville could not tax Allis–Chalmers on any activity resulting from its contract with the Army Corps of Engineers. North Bonneville raised a statute of limitations defense, and counterclaimed for judgment in the amount of the tax, plus penalties, interest and attorney fees. In its reply to the counterclaim, Allis–Chalmers asserted as a defense the invalidity of the tax, incorporating by reference the portions of its complaint claiming ordinance 285 unconstitutional.

The parties filed cross motions for summary judgment. The trial court granted Allis–Chalmers' motion, on the ground that ordinance 285 discriminates against interstate commerce on its face and therefore contravenes the commerce clause. The court concluded that Allis–Chalmers' suit was timely. The court ordered North Bonneville not to impose its B&O tax on Allis–Chalmers with respect to the 1976 contract with the Army Corps of Engineers, and dismissed the City's counterclaim. North Bonneville then moved for prospective application of the court's ruling. The motion was denied.

The City of North Bonneville appealed to Division Two of the Court of Appeals. The appeal was certified to this court, which accepted certification.

The first question is whether a statute of limitations bars this suit. The trial court reasoned that a 3–year statute of limitations applies, RCW 4.16.080, and concluded that the limitations period commenced when the Army Corps of Engineers accepted the turbines and made final payment, *i.e.*, the trial court considered these events to constitute the taxable event which in the court's view commenced the running of the limitations period. North Bonneville argues that the taxable event occurred in 1978–81, the time period during which the 1976 contract called for delivery of the turbines, and urges a 2–year statute of limitations, RCW 4.16.130. Allis–Chalmers suggests another approach: the 3–

year statute applies, but runs from the date the taxes were assessed.

■ We need not and do not decide which was the taxable event because this suit is not barred by a statute of limitations. We necessarily reach the merits of the substantive issues because North Bonneville has asserted a counterclaim for the taxes it alleges are due. North Bonneville is not barred by any limitations period from doing so. While RCW 4.16.160 generally provides that a municipality is subject to the same limitations period as a private party, we have held that this statute does not apply in the case of a municipality collecting B&O taxes in a sovereign capacity. *Tacoma v. Hyster Co.*, 93 Wn.2d 815, 821, 613 P.2d 784 (1980).

■ Because North Bonneville is entitled to seek to collect its B&O tax, and is not barred from doing so, Allis–Chalmers may assert as a defense to that counterclaim the constitutionality of the ordinance. Statutes of limitations never run against defenses arising out of the transactions sued upon. *Ennis v. Ring*, 56 Wn.2d 465, 471, 353 P.2d 950 (1959); *J.C. Felthouse & Co. v. Bresnahan*, 145 Wash. 548, 549, 260 P. 1075 (1927). In incorporating in its reply to North Bonneville's counterclaim its challenge to the constitutionality of ordinance 285, Allis–Chalmers has asserted a defense respecting the same transaction upon which North Bonneville bases its counterclaim: the applicability of ordinance 285's tax to the sale of the turbines.

Finally, on this matter, we do not agree with North Bonneville's contention that ordinance 285, § 46 precludes this suit. That section provides that an aggrieved taxpayer "may appeal to the City Council" by filing a written notice of appeal within 10 days of notice of tax due. By its terms the section is permissive, and compliance with the 10–day period is clearly not a condition precedent to suit.

■ The commerce clause protects free trade among the states. *Armco Inc. v. Hardesty*, 467 U.S. 638, 642, 81 L. Ed. 2d 540, 104 S. Ct. 2620 (1984); *National Can Corp. v. Department of Rev.*, 109 Wn.2d 878, 888, 749 P.2d 1286,

*cert. denied,* 108 S. Ct. 2030 (1988). The type of tax scheme provided for by ordinance 285, before repeal of the exemption, was the same as that invalidated in *Armco.* There, the West Virginia wholesale gross receipts tax was held to violate the commerce clause because local manufacturers were exempt from the tax. West Virginia argued that no discrimination in favor of local, intrastate commerce occurred because taxpayers manufacturing in the state were subject to a higher manufacturing tax. The Court disagreed, stating that gross manufacturing and wholesaling are not substantially equivalent events on which compensating taxes might be imposed. *Armco,* at 642–43. Discrimination was found under the West Virginia scheme because, if any of the other states imposed a manufacturing tax, as they had the right to do, then a manufacturer from that state selling in West Virginia would have to pay both the manufacturing tax and West Virginia's wholesale gross receipts tax, as opposed to a local manufacturer who would have to pay only the wholesale tax. *Armco,* at 644.

As was true of the West Virginia tax, under ordinance 285 an out–of–state manufacturer selling within North Bonneville could be subjected to heavier taxes than a local manufacturer selling within North Bonneville. In other words, a transaction originating from out–of–state could be taxed more heavily than one originating within North Bonneville, in violation of the commerce clause. Thus, under *Armco,* ordinance 285, before amendment, was unconstitutional.[2] Moreover, this court invalidated as violative of the commerce clause this state's pre–1950 B&O tax which had the same taxing scheme as that of ordinance 285. *Columbia Steel Co. v. State,* 30 Wn.2d 658, 192 P.2d 976 (1948). *See also Tyler Pipe Indus., Inc. v. Washington State Dep't of Rev.,* 483 U.S. 232, 97 L. Ed. 2d 199, 107 S. Ct. 2810 (1987)

---

[2]While it is true that intrastate transactions originating outside the city of North Bonneville were subject to the same discrimination, this fact does not cancel the discriminatory effect on interstate commerce.

(finding similar Washington State B&O tax scheme enacted in 1950 violative of the commerce clause).

North Bonneville argues, however, that it has negated the possibility of discriminatory impact of ordinance 285 by showing that no local manufacturer has been exempted from the gross receipts tax and by repeal of the exemption. Therefore, North Bonneville reasons, the issue is moot.

Contrary to North Bonneville's view, the fact that the exemption may not have been applied to any local manufacturer does not save the constitutionality of the statute. In *Armco,* the argument was made that the out-of-state seller should have to prove actual discriminatory effect. The Court rejected the argument, stating that this was not the test. *Armco,* at 644. "[A] tax must have 'what might be called internal consistency—that is the [tax] must be such that, if applied by every jurisdiction,' there would be no impermissible interference with free trade." (Citation omitted.) *Armco,* at 644. *See also Tyler Pipe,* at 247–48. Thus, the risk of multiple burdens on interstate commerce underlay the facially discriminatory effect of the West Virginia and Washington B&O taxes, as recognized by this court in *National Can,* at 889. *See also Columbia Steel,* at 662–63; *Westinghouse Elec. Corp. v. Tully,* 466 U.S. 388, 406–07, 80 L. Ed. 2d 388, 104 S. Ct. 1856 (1984) ("[w]hen a tax, on its face, is designed to have discriminatory economic effects, the Court 'need not know how unequal the Tax is before concluding that it unconstitutionally discriminates"). (Citation omitted.)

The risk of multiple burdens on interstate commerce was present under ordinance 285 before amendment by ordinance 542, and the asserted fact that no local manufacturer ever paid the gross receipts tax, and thus the exemption never applied, is irrelevant under *Armco, Tyler Pipe,* and *Columbia Steel.* Ordinance 285, before modification by ordinance 542, was unconstitutional on its face.

North Bonneville argues that, if we find the ordinance unconstitutional, it is unconstitutional only as to the exemption, and not the tax. North Bonneville argues that

ordinance 285, § 54, the severability clause, should be given effect to strike the exemption and save the tax. We do not agree.

First, we reject completely North Bonneville's contention that language in ordinance 542 be examined for intent as to the meaning of ordinance 285. Ordinance 542 was passed when this controversy was brewing, years after North Bonneville's B&O tax structure was established. We exercise our judicial function of interpreting ordinance 285 without regard to any after–the–fact effort by the council to assume that function.

Second, we do not agree that the exemption is severable. North Bonneville allowed the exemption to stand for years, despite the 1948 holding in *Columbia Steel* invalidating the same taxing scheme. We conclude that the exemption was an integral part of North Bonneville's B&O tax structure, and is not severable for that reason. Moreover, it is the taxing provision *together with* the exemption provision that renders ordinance 285 unconstitutional. Were we to sever the exemption, our holding would permit North Bonneville to collect an unconstitutional tax and rely on the courts to rescue it from its continued imposition of an invalid taxing scheme. In the meantime, taxpayers could be subjected to an unconstitutional tax which they might or might not wish to challenge in litigation. This we will not allow. The exemption is not severable; the tax is unconstitutional.

In deciding whether the trial court properly denied North Bonneville's motion for prospective application of its ruling, we will apply the same factors set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 30 L. Ed. 2d 296, 92 S. Ct. 349 (1971), which we applied in *National Can*: (1) Does our decision establish a new principle of law, either by overruling past precedent upon which the litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed? (2) Upon weighing the merits and demerits in this case by looking to prior history and

the purpose and effect of the commerce clause, will retrospective operation further or retard that purpose? (3) What inequities would be imposed by retroactive application? *National Can,* at 881.

Turning to the first factor: In relevant part, ordinance 285, § 26 provides for a B&O tax to be levied on

(a) every person engaging within the city in business as an extractor;

(b) every person engaging within the city in business as a manufacturer;

(c) every person engaging within the city in the business of making sales at wholesale; and

(d) every person engaging within the city in the business of making sales at retail.

Ordinance 285, § 28 (before amendment by ordinance 542) provided that

> [e]very person engaging in activities which are within the purview of the provisions of two or more subparagraphs (a), (b), (c), (d) . . . of Section 26, shall be taxable under each subparagraph applicable to the activities engaged in; PROVIDED, HOWEVER, that persons taxable under subparagraphs (a) or (b) of said section shall not be taxable under subparagraph (c) or (d) of said section with respect to making sales at retail or wholesale of products extracted or manufactured within the city by such persons . . .

As summarized in *Columbia Steel,* the pre–1950 state B&O taxing statute provided:

> Subd. (a) of this section levies a tax upon every person engaged within this state in business as an extractor.
> Subd. (b) exacts a tax from "every person engaging within this state in business as a manufacturer."
> Subd. (c) taxes every person in this state who is in the business of making sales at retail.
> And subd. (e) imposes a tax upon those in this state who are wholesalers.
> . . .
> Rem. Supp. 1943, § 8370–6 [P.P.C. § 965–5] provides:
> "Every person engaging in activities which are within the purview of the provisions of two or more of paragraphs (a), (b), (c), . . . (e) . . . of section 4 [§ 8370–4], shall be taxable under

each paragraph applicable to the activities engaged in: Provided, however, That persons taxable under paragraphs (a) or (b) of said section shall not be taxable under paragraphs (c) or (e) of said section with respect to making sales at retail or wholesale of products extracted or manufactured within this state by such persons."

(Italics omitted.) *Columbia Steel,* at 661.

Obviously, ordinance 285 and the statutes found unconstitutional in *Columbia Steel* contain the same taxing scheme. Since in *Columbia Steel* this court found an identical B&O tax structure unconstitutional because it violated the commerce clause, our decision here establishes no new principle of law. In focusing on *Armco v. Hardesty, supra,* rather than *Columbia Steel,* North Bonneville has failed to come to grips with controlling precedent which is over 50 years old. North Bonneville has also confused our analysis in *National Can* and *Armco* and its impact upon this state's B&O taxing scheme enacted in 1950 with its local B&O tax which parallels the *pre–1950* state tax scheme.

In short, contrary to North Bonneville's position, *National Can* does not resolve the prospectivity issue here.

As to the second *Chevron Oil* factor, in *National Can,* at 888, this court stated that it is difficult to see how retroactive application of the decision in *Tyler Pipe* invalidating the state B&O tax enacted in 1950 would encourage free trade among the states because any chill imposed on interstate trade occurred in the past. Further, the court said, the Legislature changed the taxing scheme in order to comport with the decision in *Tyler Pipe.* The court reasoned that forcing the State to collect no taxes for the entire period of the statute of limitations would be in the nature of a punitive award for the State's misconstruction of the statute's constitutionality; not all taxes imposed were necessarily unfair or interfered with free trade, and retroactive application would relieve some taxpayers of their duty to pay their fair share of the tax burden. *National Can,* at 889–90.

Similarly, here any restraint on free trade occurred in the past, and North Bonneville has repealed the multiple

activities exemption in its B&O tax. Additionally, Allis–Chalmers may have sold its goods within North Bonneville and benefited from services provided by the City. However, the difference in this case is that the taxing scheme set forth in the ordinance was invalid under *Columbia Steel,* a 1948 opinion, and allowing North Bonneville to collect no taxes is not in the nature of a punitive award for any understandable misconstruction as to the constitutionality of its tax.

Turning to the third factor, in *Bond v. Burrows,* 103 Wn.2d 153, 690 P.2d 1168 (1984), this court invalidated an exemption available to certain border counties from a higher sales tax rate imposed on all other counties. We applied our decision prospectively, noting that many state courts had prospectively applied holdings that state taxes or assessment procedures were invalid. *Bond,* at 163–64. We observed that "[t]hese state decisions primarily rely on the great financial and administrative hardship that would be entailed if retroactive effect were allowed, and the taxpayers' or tax authorities' justifiable reliance on a statute which is presumptively constitutional." *Bond,* at 164. We said that in fashioning an equitable remedy, reliance interest weighs heavily. *Bond,* at 164.

We noted that while the liability for paying the sales tax was upon the buyer, the duty to collect and remit the tax to the Department of Revenue was upon the seller. We said:

> It would be practically impossible for the border county retailers to collect the tax on transactions occurring prior to this opinion.
>
> Retroactive application of the present decision would impose a substantial hardship on the retailers in the border counties. We will not impose such a burden upon the retailers that cannot legally be passed on to the buyers.

*Bond,* at 164.

*Bond* remains correct in its rationale and result, but for two reasons, *Bond* does not support prospectivity here; indeed, the contrary is the case. First, North Bonneville did not justifiably rely on a presumptively constitutional taxing

ordinance. *Columbia Steel* completely forecloses that possibility. Second, the equities do not favor prospectivity as in *Bond*. There is in this case no group of third parties (the retailers in *Bond*) who would suffer an unfair and substantial hardship upon retroactive application of our decision. Nor is retroactivity unfair to North Bonneville. It would be inequitable to allow collection and retention of taxes by North Bonneville under a scheme clearly declared unconstitutional by this court.

The trial court correctly determined that its ruling should not be applied prospectively.

Affirmed.

CALLOW, C.J., and UTTER, DOLLIVER, DORE, PEARSON, ANDERSEN, DURHAM, and SMITH, JJ., concur.

[The appendix to this case immediately follows.]

120

ORDINANCE NO. __542__

<u>AN ORDINANCE AMENDING ORDINANCE NO. 285.</u>

WHEREAS, a questions has been presented respecting the interpretation of Section 26 (b) of Ordinance 285, when read in conjunction with certain language in Section 28 thereof, and

WHEREAS the intent of the Council has at all times been that in the event of a conflict between the language of Section 26 and that of Section 28 that the former should control, and the latter deemed a nullity, and

WHEREAS it is necessary for the orderly administration of municipal government that questions of validity, ambiguity or conflict be resolved conformably to the intent of the Council,

NOW THEN, BE IT ORDAINED BY THE COUNCIL OF THE CITY OF NORTH BONNEVILLE, WASHINGTON:

1.  The following language is deleted from Section 28 of Ordinance 285, as amended:

> "...PROVIDED, HOWEVER, that persons taxable under subparagraphs (a) or (b) of said section shall not be taxable under subparagraph (c) or (d) of said section with respect to making sales at retail or wholesale of products extracted or manufactured within the city by such persons, and shall not be taxable under subparagraph (i) of said section with respect to services which do not constitute a sale at retail or a sale at wholesale as herein defined..."

2.  This ordinance shall be deemed to be interpretative rather than operative, and shall apply to all taxes heretofore or hereafter imposed or collected under the authority of Ordinance 285, as amended.

3. This ordinance shall be in effect from the date of its passage and posting.

PASSED THE COUNCIL and approved by me this _10th_ day of _July_, 1984.

_Ernest J. Skala_
M A Y O R

ATTEST:

_Phillip J. Browne_
C L E R K

AYES: 5

NAYS: 0

122

STATE OF WASHINGTON      )
COUNTY OF SKAMANIA       ) ss.
CITY OF NORTH BONNEVILLE )

I, SHIRLEY BRENNER, Clerk of the City of North Bonneville, do hereby certify that the foregoing is a true and correct copy of Ordinance No. _542_ of the City entitled:

AN ORDINANCE AMENDING ORDINANCE NO. 285

passed by the Council of said City on the _10th_ day of _July_, 1954, and that on said _11th_ day of _July_ 1984, said Ordinance was by me duly posted according to law, there being no newspaper in said City.

DATED this _11th_ day of _July_, 1984.

_____
Shirley Brenner

STATE OF WASHINGTON      )
COUNTY OF SKAMANIA       ) ss.
CITY OF NORTH BONNEVILLE )

SHIRLEY BRENNER, being first duly sworn, on oath deposes and states:
That at all times hereinafter mentioned she was and she now is the duly appointed, qualified and acting Clerk of the City of North Bonneville, a municipal corporation in Skamania County, State of Washington; that on the _11th_ day of _July_, 1984, as such Clerk of the City of North Bonneville, she duly posted printed copies of the foregoing Ordinance No. _542_ of the City, entitled:

AN ORDINANCE AMENDING ORDINANCE NO. 285.

in three of the most public places in the City, and that at said time no newspaper was published in said City.

_____
Shirley Brenner

SUBSCRIBED AND SWORN TO before me this _11th_ day of _July_, 1984.

_____
NOTARY PUBLIC in and for the State of Washington, residing at Stevenson