DAVID STAHMER ET AL., APPELLANTS, v. STATE OF NEBRASKA ET AL., APPELLEES.

218 N. W. 2d 893

Filed June 6, 1974. No. 39305.

James M. Kelley of Kelley & Thorough, for appellants.

Clarence A. H. Meyer, Attorney General, Ralph H. Gillan, and Floyd A. Sterns, for appellees.

Heard before SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ., and VAN PELT, District Judge.

NEWTON, J.

Plaintiffs seek a declaratory judgment ruling sections 77-202.25 to 77-202.33, R. S. Supp., 1972, to be unconstitutional. Commencing with the 1972 tax levies, 12½ percent of the actual value of agricultural income-producing machinery and equipment (except motor vehicles, property assessed by the State Board of Equalization, property of public service companies, and buildings), business inventories, livestock, feed, fertilizer, and farm inventories, grain and seed, poultry, fish, honeybees, and fur-bearing animals was exempted from taxation. The exemption was increased by 12½ percent each year in each of the succeeding 4 years. The State Treasurer was directed to place sufficient revenue from sales and income taxes, each year, in a Personal Property Tax Relief Fund to reimburse tax agencies in all counties for tax revenue lost by reason of the exemptions. On certification by the counties of revenue lost, the State Treasurer was directed to transfer the funds in the Personal Property Tax Relief Fund to the county treasurers each year. The county treasurers are directed to

retain 1 percent of the money each receives and to distribute the rest among the various taxing agencies within each county. Plaintiffs' action was dismissed in the District Court.

The Constitution, State of Nebraska, provides in Article II, section 1, for the distribution of powers among the three branches of government and prohibits the delegation of its powers by one branch to another. Article III, section 22, prior to amendment in 1972, conferred upon each Legislature the power and duty to make appropriations for governmental expenses until the expiration of the first fiscal quarter after the adjournment of the next regular session, at which time all appropriations should end. Article III, section 25, forbids the withdrawal of money from the state treasury except pursuant to a specific appropriation and on presentation of a warrant issued as the Legislature shall direct. It is contended that the act delegates the legislative power to appropriate state funds to county officers certifying lost tax revenue. It must be borne in mind that the property partially exempted from taxation is assessed in the regular time-honored manner, the same as other property subject to taxation. The ascertainment of the amount of revenue lost by taxing agencies in each county is simply a matter of mathematical computation. No discretion is vested in any county officer. The revenue thus found to be lost is certified to the State Treasurer. This is a ministerial function. It is not an appropriation of state funds but provides only a basis for the determination by the proper state authority of the appropriation to be made to reimburse the counties.

It is urged that the act provides for a continuing appropriation of state funds and is in violation of Article III, section 22, Constitution, as worded prior to its 1972 amendment, in that the appropriations extend beyond the end of the first fiscal quarter after the adjournment

of the next regular legislative session. Also, that it violates Article III, section 25, in that it permits the withdrawal of state funds without a specific appropriation. The act does direct the State Treasurer to annually transfer tax funds to the Personal Property Tax Relief Fund and directs how the fund shall be expended. It is evident that the directions given are intended to remain in effect through ensuing years but the basic question is whether or not this is an appropriation bill or act. If it is, the act may well be unconstitutional. In construing the act, it is the duty of this court to give the statute an interpretation which meets constitutional requirements if it can reasonably be done. See Heywood v. Brainard, 181 Neb. 294, 147 N. W. 2d 772. Another applicable rule is that: "Legislative construction of a statutory or constitutional provision, although not conclusive on the courts, when deliberately made is entitled to great weight." Dwyer v. Omaha-Douglas Public Building Commission, 188 Neb. 30, 195 N. W. 2d 236. Laws 1973, L.B. 582, § 19, p. 1528, specifically appropriates the Personal Property Tax Relief Fund, as does Laws 1974, L.B. 997, § 66. It is evident that the Legislature did not intend or consider the statutes to be an appropriation measure. The situation is somewhat akin to that existing in Rein v. Johnson, 149 Neb. 67, 30 N. W. 2d 548, involving section 68-301, R. S. 1943, which provided: "A fund to be known as the 'State Assistance Fund' is created and established in the treasury of the State of Nebraska. There is specifically and absolutely appropriated for said fund and the purposes of sections 68-301 to 68-325, all moneys available therefor from motor fuel taxes, alcoholic liquor taxes, head taxes, and such other taxes as may be provided by law." The court stated in the above case: "It is equally as apparent, however, from the legislative history heretofore recited, that the Legislature never intended that it should operate as

an appropriation in the constitutionally prescribed sense. Rather, the word 'appropriated' as used therein was of constitutional necessity as well as legislative intent, used only to indicate that certain public revenue derived or to be derived from certain described tax revenue sources should be paid into the state treasury, there to be administratively credited, assigned, or allocated to the State Assistance Fund for assistance purposes as distinguished from other public funds of a different nomenclature." We conclude that the act is not in violation of any of the constitutional provisions above mentioned.

Plaintiffs also urge that the statutes are violative of Article III, section 18, and Article VIII, sections 1, 2, and 4, Constitution, in that the classifications exempted are unreasonable, the act serves to exempt certain taxpayers from payment of their proportionate share of taxes, prevents the levy of taxes by valuation uniformly and proportionately, and is discriminatory. The 1970 amendment of Article VIII, section 2, to provide "The Legislature *may classify personal property in such manner as it sees fit, and may exempt any of such classes, or may exempt all personal property from taxation"* specifically confers broad authority on the Legislature to classify and exempt personal property from taxation. (Emphasis supplied.) The amended portion of Article VIII, section 2, represents a special constitutional provision adopted later than, and with full knowledge of, the constitutional provisions relied on by plaintiffs. Within the plain ambit of its meaning and purpose it stands supreme and effectively negates plaintiffs' contentions, with the possible exception of the one dealing with the reasonableness of the classifications exempted. "When general and special provisions of a state Constitution are in conflict, the special provisions should be given effect to the extent of their scope, leaving the general provisions to control when the special provi-

sions do not apply." Elmen v. State Board of Equalization & Assessment, 120 Neb. 141, 231 N. W. 772.

In Swanson v. State, 132 Neb. 82, 271 N. W. 264, it is stated: "So, also, it is a well-recognized canon of construction that, 'when general and special provisions of a Constitution are in conflict, the special provisions should be given effect to the extent of their scope, leaving the general provisions to control in cases where the special provisions do not apply.' "

In view of the recent amendment of Article VIII, section 2, Constitution, it is doubtful if the statutes are subject to challenge as violating Article III, section 18, dealing with special laws, or Article VIII, section 1, requiring uniform taxation. In any event, we do not find the classifications set forth in the act to be unreasonable. "Ability to bear the burden of the tax is everywhere recognized as a reasonable ground on which to base a classification in tax measures. Classification for tax purposes may be based on the manner of conducting business, and business conducted in one manner may be taxed differently from business conducted in another manner. The purpose for which property is kept or used has long been a recognized, if not a favorite, basis for distinction in taxation. The view has also been taken that reasonable discrimination with respect to tax matters to promote fair competitive conditions, equalize economic advantages, or encourage particular industries from consideration of public policy is lawful." 51 Am. Jur., Taxation, § 182, p. 242. This court has held that: "It is competent for the Legislature to classify for purposes of legislation, if the classification rests on some reason of public policy, some substantial difference of situation or circumstance, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects to be classified." Shear v. County Board of Commissioners, 187 Neb. 849, 195 N. W. 2d 151.

"The Legislature may make a reasonable classification of persons, corporations, and property for purposes of legislation concerning them, but the classification must rest upon real differences in situations and circumstances surrounding the members of the class, relative to the subject of the legislation, which render appropriate its enactment; and to be valid the law must operate uniformly and alike upon every member of the class so designated." Rehkopf v. Board of Equalization, 180 Neb. 90, 141 N. W. 2d 462.

The exemptions granted pertain to property used in agricultural production, the products thereof, and business inventories. They are granted to all persons engaged in the lines of endeavor mentioned. There can well be public policy reasons for the grant of these exemptions. It is generally recognized that persons engaged in agricultural pursuits and in businesses with large inventories are, in proportion to ability to pay, heavily taxed. A legislative desire to equalize the tax burden with, for example, individuals with major investments in untaxed intangible personal property is not unreasonable.

In Dickinson v. Porter, 240 Iowa 393, 35 N. W. 2d 66, the court considered the validity of an act appropriating $500,000 each year for apportionment as a credit against taxes on each tract of agricultural land in school districts where millage for the general school fund exceeded 15 mills, and defined agricultural lands as tracts of 10 acres or more used for agricultural or horticultural purposes. In upholding the act, the court held: " 'The purpose for which property is kept or used has long been a recognized, if not a favorite, basis for distinction in taxation.' * * *

"It is not debatable that it is part of the public policy of this state, evidenced by our constitution and numerous statutes, to encourage agriculture. It seems equally plain the encouragement of our basic industry

serves the public interest. We are not convinced the legislature might not fairly conclude this law in its practical operation will both benefit and encourage agriculture. * * *

"Since, as we have held, this act is a valid taxing measure it is not rendered invalid by the appropriation provision. The public policy in furtherance of which the classification is made for the purposes of applying a different tax burden or a partial tax exemption, if the law be considered a partial tax exemption measure, is sufficient to support the appropriation."

In Leonardson v. Moon, 92 Idaho 796, 451 P. 2d 542, the court considered a statute very similar to the one before us. It created exemptions which were partial but increased annually until complete. Property exempted consisted of business inventories defined as: " '(1) All livestock, fur-bearing animals, fish, fowl and bees.

" '(2) Any nursery stock, stock-in-trade, merchandise, products, finished or partly finished goods, raw materials, supplies, containers and other personal property which is held for sale or consumpution (consumption) in the ordinary course of the taxpayer's manufacturing, farming, wholesale jobbing, or merchandising business.' " In upholding the constitutionality of the statute, the court held that a fundamental purpose of this legislation was to relieve parties benefited from inequitable ad valorem taxes; that the state has the right, by means of tax exemptions, to promote businesses it desires to foster; if the Legislature has the unchallenged power to grant exemptions in toto and in futuro, it may do so in part; and that setting aside sales taxes to reimburse counties and local taxing districts for revenue lost was permissible.

Partial exemptions of property from taxation have long been recognized and widely approved. Common

examples are partial exemptions of assessed value of homesteads and veterans' properties.

Prior to the amendment of Article VIII, section 2, Constitution, the statutes would have been deemed unconstitutional. See State ex rel. Meyer v. McNeil, 185 Neb. 586, 177 N. W. 2d 596. In view of the broad powers conferred on the Legislature by the amendment, we find the situation has changed and hold the statutes to be constitutional.

AFFIRMED.