MAPCO Ammonia Pipeline, Inc., appellant and cross-appellee, v. State Board of Equalization and Assessment, appellee and cross-appellee, and Gage County et al., appellees and cross-appellants.
Mid-America Pipeline Company, appellant and cross-appellee, v. State Board of Equalization and Assessment, appellee and cross-appellee, and Gage County et al., appellees and cross-appellants.
Trailblazer Pipeline Company, appellant and cross-appellee, v. State Board of Equalization and Assessment, appellee and cross-appellee, and Gage County et al., appellees and cross-appellants.
Natural Gas Pipeline Company of America, appellant and cross-appellee, v. State Board of Equalization and Assessment, appellee and cross-appellee, and Gage County et al., appellees and cross-appellants.

494 N.W.2d 535

Filed January 22, 1993.    Nos. S-91-1069, S-91-1070, S-91-1071, S-91-1072.

William R. Johnson, of Kennedy, Holland, DeLacy & Svoboda, for appellants.

Don Stenberg, Attorney General, and L. Jay Bartel for appellee State Board of Equalization.

Patrick T. O'Brien, of Bauer, Galter, O'Brien & Allan, for appellees Gage County et al.

Hastings, C.J., Boslaugh, White, Caporale, Shanahan, Grant, and Fahrnbruch, JJ.

Boslaugh, J.

This is an appeal from the order of the State Board of Equalization and Assessment (State Board) entered on the remand of *MAPCO Ammonia Pipeline v. State Bd. of Equal.*,

238 Neb. 565, 471 N.W.2d 734 (1991), and other similar cases involving appeals from the August 15, 1990, findings and order of the State Board denying the appellants' claims for property tax relief. In the prior case (*MAPCO I*), the appellants had requested that the value of their real and personal property be equalized with the value of railroad rolling stock and other similar property that had been treated as exempt from taxation.

In *MAPCO I*, we held that the process of equalization cannot be applied to property that is not taxed; that personal property and real property are both tangible property and must be equalized and taxed uniformly under Neb. Const. art. VIII, § 1, as it then existed; that the State Board erred in failing to assess or tax the rolling stock of railroad or carline companies in 1990; that although the federal court had enjoined the collection of a particular tax because it was discriminatory, the property in question had not been exempted; that *Stahmer v. State*, 192 Neb. 63, 218 N.W.2d 893 (1974) was overruled; and that the provisions of Neb. Rev. Stat. § 77-202(6) through (9) (Reissue 1990) were unconstitutional. The effect of *MAPCO I* was to determine that the property which had been improperly and unconstitutionally exempted should be returned to the tax rolls and its value equalized with all other property subject to tax.

We further held that the remedy to which the appellants were entitled was not for their property to be "equalized" at zero percent of actual value, but for it to be taxed uniformly and proportionately in compliance with art. VIII, § 1, as it then existed. The order of the State Board was reversed and the cause remanded with directions to assess the property of the appellants and equalize its value as required by article VIII, § 1, of the Nebraska Constitution and the applicable statutes.

Following the remand, the State Board met and conducted hearings on October 2 and 30, 1991, at which time the State Board received evidence and heard evidence as to how the State Board could comply with the directions of this court on the remand.

In addition to the appellants which had appeared and participated in the hearing involved in *MAPCO I*, a number of governmental subdivisions, including Gage County, cities, and

various school districts, appeared and participated in the hearings and offered evidence which was objected to by the appellants on the ground that participation in the hearings on remand should be restricted to parties who had appeared and participated in the original hearings involved in *MAPCO I*. The State Board sustained the objections of the appellants and decided to not consider the evidence offered by the governmental subdivisions, which appear in this appeal as appellees and by cross-appeal contend that the State Board should have received and considered the evidence which they offered.

The political subdivisions will be directly affected by the action taken by the State Board on the remand because they had imposed and collected taxes based upon the prior action of the State Board and were faced with the possibility of being required to refund to taxpayers substantial amounts of money, depending upon the action taken by the State Board on remand of the *MAPCO I* decision.

Because the political subdivisions were interested parties, they had a right to appear before the State Board and offer evidence, and the State Board should have considered their evidence. However, since we review the record de novo and all of the evidence in question is in the record, the error is cured by our considering the evidence in this appeal.

The appellants had earlier moved to dismiss the cross-appeal. Ruling on that motion was reserved until the appeal was heard in this court. That motion is now overruled.

At the conclusion of the hearings on October 30, 1991, the State Board ordered the Tax Commissioner to reduce the equalized unit value of the appellants' property as certified by the board for tax year 1990 by 18.81 percent. It is from that order that the appellants have appealed.

The sole issue on this appeal is a determination of the relief to which the appellants are entitled as a result of the error in the August 15, 1990, findings and order of the State Board which were involved in *MAPCO I*.

The appellants contend that the value of their property should be reduced to zero for tax purposes so that they will receive the same treatment as those taxpayers whose property

has been treated as exempt from taxation.

The relief which the State Board gave to the appellants was determined by calculating the ratio between the value of property considered exempt under § 77-202(6) through (9) plus the value of railroad rolling stock and the value of all tangible property in Nebraska, including that considered to be exempt. The calculation is based largely on the testimony of Dennis Donner, an administrator of the property tax division for the Nebraska Department of Revenue. To some extent his testimony as to values was based on estimates, but it appears to be the best evidence available. The appellants had the opportunity to cross-examine Donner and offered no evidence to contradict his testimony as to values.

In *McKesson Corp. v. Florida Alcohol & Tobacco Div.*, 496 U.S. 18, 110 S. Ct. 2238, 110 L. Ed. 2d 17 (1990), the U.S. Supreme Court considered the matter of the relief to which taxpayers who have been subjected to an illegal and discriminatory tax are entitled under the Due Process Clause of the 14th Amendment to the U.S. Constitution. The Court noted that the state might choose to erase the property deprivation by providing the taxpayer with a full refund of the tax payments, or the state could cure the invalidity by refunding the difference between the tax paid and the tax which would have been paid if all taxpayers had been treated equally. Alternatively, the Court held that the state might assess and collect back taxes from taxpayers who had received the unlawful benefits or it might utilize a combination of partial refunds and partial retroactive assessments of tax increases.

The remedy which the State Board selected in this case conforms to the second method—a refund of the difference between the taxes levied against the property of the appellants and the taxes which the appellants would have been required to pay if all of the exempt property in question had been placed on the tax rolls and taxed.

We believe the relief ordered by the State Board corrects the disproportionality in the taxation of appellants' property within the class of all tangible property in compliance with article VIII, § 1, of the Nebraska Constitution and the Due Process Clause of the 14th Amendment to the U.S.

Constitution. The actual disproportionality borne by the appellants is not measured by the fact that certain property escaped taxation, but by the effect of the nontaxation of certain property in relation to the class of all real and personal property. The appellants have been provided a remedy which assures that they are obligated to pay no more than their fair share of the total property tax burden, which is the amount they would have paid if the State had properly included all property on the tax rolls that should have been taxed.

The order of the State Board of Equalization and Assessment is affirmed.

AFFIRMED.

CAPORALE, J., not participating in the decision.

SHANAHAN, J., dissenting.

After *MAPCO Ammonia Pipeline v. State Bd. of Equal.*, 238 Neb. 565, 471 N.W.2d 734 (1991) (*MAPCO I*), registered 10 on a Richter scale for taxquakes, today's decision, as aftershock from *MAPCO I*, again shakes Nebraska's personal property tax structure because the majority retroactively applies *MAPCO I* rather than prudently applying *MAPCO I* prospectively.

Prospective application of a judicial change in substantive law has been recognized and repeatedly approved by various courts, ranging from the U.S. Supreme Court to numerous state courts. Perhaps the foremost federal decision on prospective application of a substantive change in law is *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-07, 92 S. Ct. 349, 30 L. Ed. 2d 296 (1971), wherein the Supreme Court expressed the following standard which has been accepted for more than 20 years:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . . Second, [the court] must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or

retard its operation. . . . Finally, [the court must weigh] the inequity imposed by retroactive application, for [w]here a decision of [the court] could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity.

(Internal citations and quotation marks omitted.) See, also, *American Trucking Assns., Inc. v. Smith*, 496 U.S. 167, 110 S. Ct. 2323, 110 L. Ed. 2d 148 (1990); *Gt. Northern Ry. v. Sunburst Co.*, 287 U.S. 358, 53 S. Ct. 145, 77 L. Ed. 360 (1932).

Judicial decisions that substantively change state tax laws, especially changes that lead to or necessitate tax refunds resulting from invalidation of a tax law under which taxes have been collected, are usually applied prospectively rather than retroactively, as reflected in many tax decisions by courts of other states; for example, *Carrollton-Farmers v. Edgewood Independent*, 826 S.W.2d 489 (Tex. 1992) (although the method of financing public education violated the Texas Constitution, retroactive effect of the decision declaring the tax law unconstitutional would damage the school system in a manner that could not further the purpose of the Texas Constitution; hence, the constitutional rule expressed in the decision was applied only prospectively); *Metropolitan Life v. Com'r of Dept. of Ins.*, 373 N.W.2d 399 (N.D. 1985) (refusal to order a refund of an unconstitutional premiums tax on foreign insurance companies, since the state had relied on a tax system that had existed for decades, and compulsory refunds would cause financial hardship to the state); *Foss v. City of Rochester*, 65 N.Y.2d 247, 480 N.E.2d 717, 491 N.Y.S.2d 128 (1985) (invalidation of a tax was prospectively applied to prevent the city from suffering an undue fiscal burden from tax refunds); *Bond v. Burrows*, 103 Wash. 2d 153, 690 P.2d 1168 (1984) (refused to require refund of unconstitutional sales tax that would result in great financial and administrative hardship to the state); *Rio Algom Corp. v. San Juan County*, 681 P.2d 184 (Utah 1984) (tax invalidation was prospectively applied so that fiscal solvency of local governments might be preserved); *Salorio v. Glaser*, 93 N.J. 447, 461 A.2d 1100 (1983) (application of judicial decision invalidating state transpor-

tation tax deferred until 6 months after the tax decision); *Strickland v. Newton County*, 244 Ga. 54, 258 S.E.2d 132 (1979) (decision invalidating sales tax was prospectively applied to avoid unjust results); *Soo Line R. Co. v. State*, 286 N.W.2d 459 (N.D. 1979) (notwithstanding that a system for taxing centrally assessed property was unconstitutional, the judicial decision declaring unconstitutionality of the tax system was prospectively applied to prevent chaos); *Jacobs v. Lexington-Fayette Urban Cty. Government*, 560 S.W.2d 10 (Ky. 1977) (a decision, invalidating an unconstitutional personal property tax, was prospectively applied lest there be a hardship on all citizens of local government and a chaotic disruption of services); and *Southern Pacific Company v. Cochise County*, 92 Ariz. 395, 377 P.2d 770 (1963) (property tax system which systematically undervalued certain classes of property was unconstitutional, but judicial decision declaring unconstitutionality of the tax system operated only prospectively in order to prevent great hardship on government).

As reflected by many decisions of this court, a prospectively applied judicial change of substantive law is no stranger in Nebraska. See, *Myers v. Drozda*, 180 Neb. 183, 141 N.W.2d 852 (1966) (abolition of tort immunity for nonprofit charitable hospitals); *Brown v. City of Omaha*, 183 Neb. 430, 160 N.W.2d 805 (1968) (abolition of tort immunity for governmental subdivisions concerning claims based on negligence in the operation of motor vehicles); *Johnson v. Municipal University of Omaha*, 184 Neb. 512, 169 N.W.2d 286 (1969) (abolition of tort immunity for municipal universities); *Root v. School Dist. No. 25*, 184 Neb. 570, 169 N.W.2d 464 (1969) (abolition of tort immunity for local school districts); *Sosso v. Sosso*, 196 Neb. 242, 242 N.W.2d 621 (1976) (abolition of district court jurisdiction to terminate parental rights in actions for dissolution of marriage). More recently, in *Commercial Fed. Sav. & Loan v. ABA Corp.*, 230 Neb. 317, 322, 431 N.W.2d 613, 617 (1988), we overruled prior Nebraska case law that a bid at a judicial sale was revocable before acceptance, and applied prospectively a new rule, making bids at judicial sales irrevocable, because "Commercial Federal relied upon a rule in existence for 94 years. Fairness and equity dictate that the

above-announced rule of law be effective as of the date of this opinion."

*Stahmer v. State*, 192 Neb. 63, 218 N.W.2d 893 (1974), was this court's landmark decision which recognized and ·acknowledged that the Legislature was constitutionally authorized to exempt personal property from taxation pursuant to Neb. Const. art. VIII, § 2, in its previous form existing at the time of *Stahmer*: "The Legislature may classify personal property in such manner as it sees fit, and may exempt any of such classes, or may exempt all personal property from taxation."

After *Stahmer*, this court decided *Kearney Convention Center v. Board of Equal.*, 216 Neb. 292, 344 N.W.2d 620 (1984), and *Banner County v. State Bd. of Equal.*, 226 Neb. 236, 411 N.W.2d 35 (1987), both of which determined that certain aspects of real estate taxation were unconstitutional in view of Neb. Const. art. VIII, § 1, the uniformity clause of the Nebraska Constitution. Neither *Kearney Convention Center* nor *Banner County* involved any question concerning the Legislature's power to exempt personal property from taxation. Relying on *Kearney Convention Center* and *Banner County*, the majority of this court, in *Northern Natural Gas Co. v. State Bd. of Equal.*, 232 Neb. 806, 443 N.W.2d 249 (1989), and *Natural Gas Pipeline Co. v. State Bd. of Equal.*, 237 Neb. 357, 466 N.W.2d 461 (1991), concluded that centrally assessed personal property of pipeline companies was unconstitutionally classified for tax purposes. However, even after those four post-*Stahmer* tax decisions, *Stahmer* itself endured without comment by the majority of this court. Moreover, in those four post-*Stahmer* decisions, this court, in striking down parts of Nebraska's statutory structure for taxation of personal property, wrapped itself in a crazy quilt of inconsistencies fashioned from legal whole cloth, rather than wearing a robe made of constitutional fabric.

With that background, in *MAPCO I*, this court overruled *Stahmer*, a tax decision which had stood for nearly 20 years, thereby dramatically and essentially changing the previous and longstanding view of the Legislature's tax exemption power under article VIII, § 2, and, further, declaring that the

constitutionally and expressly conferred power of the Legislature for tax exemption of personal property was somehow subordinated to article VIII, § 1, the uniformity clause concerning taxation of tangible property. A strong argument exists that as the result of *MAPCO I*, the Legislature's exemptive power regarding taxation of tangible personal property was not merely judicially subordinated to another constitutional provision, but was effectively and entirely eliminated from the Nebraska Constitution. Nonetheless, *MAPCO I*, as a revolutionary ruling and a clean break with Nebraska precedent, was absolutely and totally beyond expectation and predictability by the Nebraska Legislature. The governmental hardship inflicted by *MAPCO I*, including the very real probability of myriad tax refunds, defies a definitive description. Thus, *MAPCO I* clearly meets the standard expressed in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S. Ct. 349, 30 L. Ed. 2d 296 (1971), for prospectivity in applying a change of substantive law.

To compound the chaos, the majority has relied on *McKesson Corp. v. Florida Alcohol & Tobacco Div.*, 496 U.S. 18, 110 S. Ct. 2238, 110 L. Ed. 2d 17 (1990). In *McKesson Corp.*, the Supreme Court examined a tax scheme devised by the State of Florida to alleviate its preferential and, therefore, discriminatory tax treatment of beverages made from Florida-grown citrus crops. Florida contended that a tax refund to the disfavored distributors was unnecessary to rectify Florida's Commerce Clause violation, because if the state had known that the tax would be declared unconstitutional, a higher tax would have been imposed on all distributors. According to Florida, the disfavored distributors would have paid the same tax under this "hypothetical" tax scheme as was actually paid under the discriminatory tax system. In holding that Florida's hypothetical tax scheme violated the Due Process Clause of the U.S. Constitution, the Court stated:

> [Florida and its agencies] suggest that, in order to redress fully petitioner's unconstitutional deprivation, the State need not *actually* impose a constitutional tax scheme retroactively on all distributors during the contested tax period. Rather, they claim, the State need only place

petitioner in the same tax position that petitioner *would have been placed* by such a hypothetical scheme. . . .

We implicitly rejected this line of reasoning in *Montana National Bank* [*of Billings v. Yellowstone County*, 276 U.S. 499, 48 S. Ct. 331, 72 L. Ed. 673 (1928),] and [*Iowa-Des Moines National Bank v.*] *Bennett*, [284 U.S. 239, 52 S. Ct. 133, 76 L. Ed. 265 (1931),] and we expressly do so today. . . . The deprivation worked by the Liquor Tax violated the Commerce Clause because the tax scheme's purpose and effect was to impose a relative disadvantage on a category of distributors (those dealing with nonpreferred products) largely composed of out-of-state companies, not because its treatment of this category of distributors diverged from some fixed substantive norm. Hence, the salient feature of the position petitioner "should have occupied" absent any Commerce Clause violation is its equivalence to the position actually occupied by petitioner's favored competitors.

But the State's offer to restore [McKesson] only to the same *absolute* tax position it would have enjoyed if taxed according to a "hypothetical" nondiscriminatory scheme does not in hindsight avoid the unlawful deprivation: It still in fact treats petitioner worse than distributors using the favored local products, thereby perpetuating the Commerce Clause violation during the contested tax period.

(Emphasis in original.) 496 U.S. at 41-43.

As a result of today's decision, this court has approved a tax remedy which bears a marked resemblance to the Florida "hypothetical" tax scheme condemned by the due process analysis in *McKesson Corp.* However, the due process issue which this court generates today could easily be eliminated through prospectively applying *MAPCO I.* See *American Trucking Assns., Inc. v. Smith,* 496 U.S. 167, 110 S. Ct. 2323, 110 L. Ed. 2d 148 (1990).

Because I still maintain that *MAPCO I* is incorrect in its declaration that certain personal property tax exemptions are unconstitutional, and since the majority has applied *MAPCO I* retroactively rather than prospectively, I dissent from the disposition authorized by the majority in today's decision.