AMISUB (Saint Joseph Hospital), Inc., appellant, v. Board of County Commissioners of Douglas County, Nebraska, appellee.

508 N.W.2d 827

Filed December 3, 1993.   No. S-92-263.

William R. Johnson and Raymond E. Walden, of Kennedy, Holland, DeLacy & Svoboda, for appellant.

James S. Jansen, Douglas County Attorney, and Edwin T. Lowndes for appellee.

Hastings, C.J., Boslaugh, White, Caporale, Shanahan, Fahrnbruch, and Lanphier, JJ.

Hastings, C.J.

AMISUB (Saint Joseph Hospital), Inc., brought this action pursuant to Neb. Rev. Stat. § 77-1735 (Reissue 1990), to recover real and personal property taxes paid for the year 1989. The district court dismissed the plaintiff's third amended petition and overruled the plaintiff's motion for a new trial.

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *In re Application of City of Lexington, ante* p. 62, 504 N.W.2d 532 (1993); *In re Application of City of Lincoln*, 243 Neb. 458, 500 N.W.2d 183 (1993).

The plaintiff-appellant, AMISUB, owns and operates Saint Joseph Hospital in Omaha and owns real and personal property at the hospital and elsewhere in Douglas County. The plaintiff's personal property in Douglas County was valued, assessed, and levied upon, with a total tax for 1989 of $246,326.26. The plaintiff's real property was valued, assessed, and levied upon, with a total tax for 1989 of $1,709,193.24. Payments for both the first and second half property taxes were made under protest. American Medical International demanded a refund of the personal property taxes paid by AMISUB, a wholly owned subsidiary, by a letter to the Douglas County treasurer dated December 28, 1989. The claim was denied by the Douglas County Board of County Commissioners on January 16, 1990. AMISUB demanded refund of its second half real property taxes by letter dated August 13. The board denied this claim on August 21.

AMISUB filed suit in the district court, seeking refund of all 1989 real and personal property taxes. A trial was held on November 27, 1991, and the court decided the matter upon the plaintiff's third amended petition, filed with leave of court on December 10, after close of all the evidence. That petition asserted that the action was brought pursuant to § 77-1735 (Reissue 1990) and that the taxes assessed, levied, and paid by AMISUB for the year 1989 were unconstitutional. It was alleged that the taxes violated both the uniformity requirements of article VIII, § 1, of the Nebraska Constitution and the Equal Protection Clause of the 14th Amendment to the U.S. Constitution in that the rolling stock of certain railroads was "unlawfully exempted" from taxation, in that certain pipeline companies and airlines "will pay no taxes on their personal property in Douglas County for tax year 1989," and in that by an agreement with the State of Nebraska certain railroads were

taxed on the basis of 25 percent of the actual value of their property. This petition prayed for an order by the court that the taxes for the year 1989 levied and assessed and paid by AMISUB be refunded in full.

On January 22, 1992, the district court entered its order, finding generally for the defendant and dismissing the plaintiff's third amended petition. The court noted that the plaintiff had limited its cause of action to an action brought under § 77-1735 (Reissue 1990). The court concluded:

> Section 77-1735 sets forth a procedure for claiming a refund of taxes paid which the payor claims to be illegal "for any reason other than the valuation of the property." As the Court stated in its prior decision overruling defendant's demurrer, plaintiff's claim is not one of illegal valuation but is based on uniformity. Plaintiff claims that its assessment is illegal because other owners of personal and real property have been illegally exempted in whole or in part.

> Section 77-1735 defines what an illegal tax is which may be refunded pursuant to the statute. It states that "Illegal shall mean a tax levied for an unauthorized purpose or as a result of fraudulent conduct on the part of the taxing officials." Plaintiff seems to contend that a tax levy that is not uniform is illegal. Without deciding that contention, a tax illegal for that reason cannot be found to be within the plain meaning of the definition of "illegal". There is no evidence that the tax involved was levied for an unauthorized purpose or as a result of fraudulent conduct on the part of the tax officials and, therefore, plaintiff may not utilize said section to claim a refund for the tax it claims is illegal.

On appeal, AMISUB asserts that the district court erred in finding a lack of jurisdiction under § 77-1735 (Reissue 1990), based on the court's interpretation that the statute's scope did not allow for a challenge to the uniformity of taxes imposed on the plaintiff.

This court recently addressed the requirements for a cause of action under § 77-1735 (Reissue 1986) in *First Data Resources v. Howell*, 242 Neb. 248, 494 N.W.2d 542 (1993). We found that

a cause of action is stated under § 77-1735 for the payment of an invalid tax when the petition filed by the taxpayer alleges that the taxes assessed and levied were unconstitutional and void.

The version of § 77-1735 operative at the time of *First Data Resources* stated:

> If a person who claims a tax or any part thereof to be *invalid* for any reason other than the valuation of the property shall have paid the same to the treasurer or other proper authority in all respects as though the same was legal and valid, he or she may . . . demand the same in writing from the county treasurer to whom paid.

(Emphasis supplied.)

However, the section at issue has since been amended by 1989 Neb. Laws, L.B. 762, which became effective on August 25, 1989, and 1991 Neb. Laws, L.B. 829, which became effective on June 11, 1991. L.B. 762 provided as follows:

> (1) Except as provided in subsection (2) of this section, if a person makes a payment to any county or other political subdivision of any tax upon real or personal property or any payment in lieu of tax with respect to property and who claims a the tax or any part thereof to be invalid is illegal for any reason other than the valuation the property . . . he or she may, at any time within thirty days after such payment, make a written claim for refund of the payment . . . . For purposes of this section, illegal shall mean a tax levied for an unauthorized purpose or as a result of fraudulent conduct on the part of the taxing officials.

(Emphasis and overstrikes in original.)

L.B. 829 provided in pertinent part:

> (1) Except as provided in subsection (2) of this section, if a person makes a payment to any county or other political subdivision of any property tax upon real or personal property or any payment in lieu of tax with respect to property and claims the tax or any part thereof is illegal for any reason other than the valuation or equalization of the property, he or she may, at any time within thirty days after such payment, make a written claim for refund of the payment from the county treasurer to whom paid.

(Emphasis and overstrikes in original.)

Although AMISUB asserts in its brief that the action originally was filed February 15, 1990, the record before us contains only the third amended petition, filed December 10, 1991, which alleged that recovery was sought "pursuant to § 77-1735 R.R.S. 1943 (Reissue of 1990)." Nevertheless, it seems apparent that this lawsuit was tried and decided on the basis of § 77-1735 as amended by L.B. 762 and codified as § 77-1735 (Reissue 1990), and this appeal will be determined on the theory upon which the parties and the trial court relied.

As may be seen, § 77-1735 applicable at the time of *First Data Resources, supra*, is quite different from the section as amended by L.B. 762 in that "invalid" has been changed to "illegal" and illegal has been defined as "a tax levied for an unauthorized purpose or as a result of fraudulent conduct on the part of the taxing officials." § 77-1735 (Reissue 1990). Therefore, we are not free to apply the general dictionary definition of "illegal" in resolving this matter, but must apply the more limited definition contained in the statutes.

Nowhere in AMISUB's petition is it alleged that the tax complained of was "levied for an unauthorized purpose or as a result of fraudulent conduct on the part of the taxing officials," as required by § 77-1735 (Reissue 1990), nor do any of the allegations support such conclusion. However, AMISUB asserts that a tax levied in violation of the Constitution not only is illegal, but also has an unauthorized purpose, and contends that, despite the change in language, § 77-1735 always has been and still is a vehicle for constitutional challenges. As previously stated, the thrust of the allegations made in the third amended petition is that the tax levied against AMISUB was unconstitutional and illegal because certain " 'machinery and equipment used for business purposes' " was exempted from taxation, that certain railroad rolling stock was "unlawfully exempted from taxation," that Northern Natural Gas Company and other centrally assessed taxpayers would pay no taxes on personal property under the existing or previously existing tax laws, and that other taxpayers were taxed on only 25 percent of their actual value. AMISUB concluded by praying for a refund of all taxes paid in 1989. However, as discussed

below, § 4 of L.B. 762 also made changes to Neb. Rev. Stat. § 77-1736.04 (Reissue 1986). These changes reflect the Legislature's intent to separately treat challenges to the constitutionality of a tax.

The more important changes in the "refund" law were brought about by L.B. 762 and L.B. 829 as they amended § 77-1736.04 (Reissue 1986). That section, at the time of *First Data Resources, supra*, read in part as follows:

> If, by judgment or final order of any court of competent jurisdiction in this state, in an action not pending on appeal or error, it has been or shall be adjudged and determined that any personal property or real estate tax, assessment, or penalty or any part thereof was *illegal* and such judgment or order has not been made or shall not be made in time to prevent the collection or payment of such tax, assessment, or penalty, then such tax, assessment, or penalty, whether expended or not, which has been collected pursuant to such *illegal* tax, assessment, or penalty for the year such tax, assessment or penalty is determined to be *illegal* shall, without the necessity of filing a claim therefor, be repaid and refunded in the county where originally paid to the person paying such tax, assessment or penalty.

(Emphasis supplied.) § 77-1736.04 (Reissue 1986).

Section 4 of L.B. 762, codified as § 77-1736.04 (Reissue 1990), provided:

> If . . . by judgment or final order of any court of competent jurisdiction in this state, in an action not pending on appeal or error, it *has been or shall be adjudged* and determined that any real or personal property . . . tax, assessment, or penalty or any part thereof was <u>unconstitutional</u> for any reason other than the valuation of the property . . . and such judgment or order has not been made . . . in time to prevent the collection or payment of such tax, assessment, or penalty, then such tax, assessment, or penalty, whether expended or not, which has been collected pursuant to such . . . <u>unconstitutional</u> tax, assessment, or penalty for the year such tax, assessment, or penalty is determined to be . . .

unconstitutional shall, without the necessity of filing a claim therefor, be repaid and refunded in the county where originally paid to the person paying such tax, assessment, or penalty.

(First emphasis supplied.) (Other emphasis in original.) (Emphasis omitted.)

The provisions of L.B. 829, codified as § 77-1736.04 (Cum. Supp. 1992), also specifically address the unconstitutionality of a tax:

(1) If a court of competent jurisdiction by final nonappealable order determines that any property tax or penalty . . . is unconstitutional for any reason other than the valuation or equalization of the property, the tax or penalty shall be refunded to the person paying the tax . . . without the necessity of filing a claim therefor. . . .

. . . .

(3) An action seeking the declaration that a tax or penalty is unconstitutional shall be brought within the year that the tax or penalty is levied or assessed. A refund shall be provided only to a person who has instituted legal proceedings to declare the tax or penalty unconstitutional.

(Emphasis omitted.)

When considering a series or collection of statutes pertaining to a certain subject matter, which statutes are in pari materia, they may be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions of the act are consistent and sensible. *Curry v. State ex rel. Stenberg*, 242 Neb. 695, 496 N.W.2d 512 (1993); *In re Interest of Powers*, 242 Neb. 19, 493 N.W.2d 166 (1992).

To the extent there is a conflict between two statutes on the same subject, a specific statute prevails over a general statute. *Maack v. School Dist. of Lincoln*, 241 Neb. 847, 491 N.W.2d 341 (1992); *Cole v. Kilgore*, 241 Neb. 620, 489 N.W.2d 843 (1992).

Thus, while "unconstitutionality" generally may be encompassed under the term "illegality," in this instance it is clear that by the changes to §§ 77-1735 and 77-1736.04 effectuated by L.B. 762, the Legislature intended unconstitutionality to be treated separately from allegations of

illegality due to an unauthorized purpose or fraudulent conduct on the part of taxing officials. A claim for refund of payments made as a result of alleged unconstitutional taxes must be made under § 77-1736.04 (Cum. Supp. 1992).

However, this does not end our inquiry. "A petition will be sufficient if, under the facts alleged, the law entitles a plaintiff to recover." *First Nat. Bank of Omaha v. State*, 241 Neb. 267, 271, 488 N.W.2d 343, 346 (1992). Therefore, we examine § 77-1736.04 (Reissue 1990) to determine whether AMISUB has alleged and proved facts sufficient to support a cause of action under that section, the provisions of which we have previously set forth.

AMISUB's theory of recovery seems to be that because the exemptions granted to certain taxpayers were unconstitutional, AMISUB is to be placed in the same position as those taxpayers which escaped taxation by receiving a full refund of the taxes paid. That is not the rule to come out of any of the recent tax cases beginning with *Northern Natural Gas Co. v. State Bd. of Equal.*, 232 Neb. 806, 443 N.W.2d 249 (1989), *cert. denied* 493 U.S. 1078, 110 S. Ct. 1130, 107 L. Ed. 2d 1036 (1990), and culminating in *MAPCO Ammonia Pipeline v. State Bd. of Equal.*, 242 Neb. 263, 494 N.W.2d 535 (1993). At most, AMISUB would be entitled to a refund of the difference between the taxes levied against the property of AMISUB and the taxes which AMISUB would have been required to pay if all of the property treated as exempt had been placed on the tax rolls and taxed. See *id*. Contrary to the facts developed in *MAPCO Ammonia Pipeline* as to the ratio between property which was treated as exempt plus the value of property of the railroads and the value of all tangible property in Nebraska, the record here contains no evidence upon which such a determination could be made. Therefore, AMISUB has failed to meet its burden of establishing these facts, and its petition was properly dismissed.

The judgment of the district court is affirmed.

AFFIRMED.