REQUESTED BY: Allen Curtis, Director Nebraska Commission on Law Enforcement and Criminal Justice
You have requested the opinion of this office on three issues pertaining to annual certification of firearms training for law enforcement officers under Neb. Rev. Stat. § 81-1412 (Cum. Supp. 1996). In your opinion request, you explain that the Commission on Law Enforcement and Criminal Justice ("Commission"), the Police Standards Advisory Council ("PSAC"), and the Law Enforcement Training Center ("Training Center") are involved in developing rules and regulations regarding qualifications for a firearms shooting course, qualifications for firearms instructors, and requalification procedures for officers who fail to qualify with firearms, as required in § 81-1412. In order to avoid problems with the regulations due to issues concerning the Training Center's statutory authority, you are requesting our opinion.
 Waiver of Firearms Certification Requirements
Your first question is "Can the Director of the Nebraska Law Enforcement Training Center waive the requirements of Neb. Rev. Stat. Section 81-1412?" As an example, you posed the hypothetical questions of whether the Director can tell a sheriff that he does not have to qualify if he does not carry a handgun, or if the Director can waive the requirement if the officer has a period of disability in which he or she is unable to shoot. We believe that the Director of the Training Center does not have the authority to waive the requirements set out in § 81-1412.
Section 81-1412, in pertinent part, states:
 Law enforcement officer; firearm proficiency; records. (1) In order to maintain proficiency in firearm operation, a law enforcement officer shall qualify at least once every calendar year on a firearm shooting course approved by the director [of the training center].
 (2) Qualification on a firearm shooting course shall be conducted by a qualified firearm instructor pursuant to rules and regulations adopted and promulgated by the training center. * * * The director shall adopt and promulgate rules and regulations for requalification for the case in which a law enforcement officer fails to qualify. The peace officer status of a law enforcement officer who fails to qualify shall be determined by the director.
Neb. Rev. Stat. § 81-1412 (Cum. Supp. 1996) (emphasis in original).
The fact that the Legislature chose to use the word "shall" when setting out the requirements for law enforcement officers to qualify with firearms at least once a year indicates that the director of the training center does not have discretion to waive the requirement. As a matter of Nebraska law, "[w]hen the word shall appears, mandatory or ministerial action is presumed." Neb. Rev. Stat. § 49-802(1) (1993). This language indicates that, absent any contrary statutory language, a court would presume that the requirements set out in § 81-1412(1) are mandatory, and cannot be waived by the director. Nebraska caselaw also supports this conclusion. The Nebraska Supreme Court has held that it is a general rule of statutory construction that the use of the word "shall" is mandatory and inconsistent with the idea of discretion. Loup City Public Schools v. Nebraska Dept. ofRevenue, 252 Neb. 387, 393, ___ N.W.2d ___, ___ (1997). See alsoPayne v. Nebraska Dept. of Correctional Services, 249 Neb. 150,153, 542 N.W.2d 694, 696 (1996); Smith v. State, 248 Neb. 360,365, 535 N.W.2d 694, 697 (1995). When the Legislature intends to allow discretionary action, the word "may" is used. See Neb. Rev. Stat. § 49-802(1) (1993). These rules of statutory construction demonstrate that if the Legislature had intended to provide the director with the discretion to waive or modify the requirement that all law enforcement officers must successfully qualify once a year with firearms, it would have placed language to that effect in the statute.
Our review of the legislative history for § 81-1412 did not provide any evidence that would contradict the above conclusion. In fact, the language in the introducer's statement indicates that the firearms requirements were intended to apply to every law enforcement officer, regardless of rank or position. One of the stated purposes for the original bill was "to insure that all law enforcement officers maintain a standard level of proficiency with their service firearm." Committee Records on LB1055, 94th Neb. Leg., 2nd Sess., Introducer's Statement of Intent, (Feb. 1, 1996). The statement also explains that "LB 1055 addresses the issue of adequate firearm training for all law enforcement officers at all levels in Nebraska." Id. These statements appear to indicate that the bill was intended to ensure that all Nebraska law enforcement officers, at all ranks and levels, meet a minimum level of firearm proficiency. Neither the statute nor the legislative history demonstrate that the Legislature intended to allow this requirement to be avoided or waived.
 Meaning of the Word "Status" in § 81-1412
Your second question is based on the provision in §81-1412(2) stating that "[t]he peace officer status of a law enforcement officer who fails to qualify shall be determined by the director." Although the statute states that the director shall determine the officer's status, you ask what this entails. You go on to inquire "Does this entail revocation of an officer's certification which can only be statutorily accomplished through actions by the PSAC as approved by the Commission or does it mean a temporary suspension of certificate?" You also ask "does this allow the Director to tell an agency that its officer who failed to qualify cannot carry a handgun?" Although the issue is not entirely clear, it is our opinion that in using the term "status," the Legislature intended that the director of the training center was the authority responsible for making the official determination that an officer failing to qualify with a firearm no longer was eligible to be a certified law enforcement officer in the State of Nebraska.
Although § 81-1401 (Cum. Supp. 1996) provides definitions of the terms used in §§ 81-1401 to 81-1414, it does not define the word "status." Absent a statutory definition, when construing statutes we must normally determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute as considered in its plain, ordinary, and popular sense. SID No. 57 v. City of Elkhorn,248 Neb. 486, 500, ___ N.W.2d ___, ___ (1995). However, the word status as used in § 81-1412(2) could be read to mean the director should determine whether an individual can retain his or her standing as a certified law enforcement officer, or it could mean that the director can impose restrictions on the activities or duties in which a person failing to qualify could engage. In its plain and ordinary sense, it would seem that status could include either meaning, or both. The word status has been defined to mean "Standing; state or condition; social position. The legal relation of [an] individual to [the] rest of the community. The rights, duties, capacities and incapacities which determine a person to a given class." Black's Law Dictionary, 1410 (6th ed. 1990). Unfortunately, this definition does little to clarify whether the director's authority is to deny certification or to take some other unspecified action.
The statute in this situation does not provide a clear indication as to how the term "status" should be construed. We must therefore examine the legislative history in order to try to ascertain the meaning. "When statutory language is ambiguous and must be construed, recourse should be had to the legislative history for the purpose of discovering the intent of the lawmakers." Witherspoon v. Sides Construction Company,219 Neb. 117, 121, 362 N.W.2d 35, 40 (1985).
There were several amendments made to LB 1055 (the bill which created § 81-1412) prior to its adoption. Some of the amendments dealt specifically with the provisions about which the Commission has concerns. On February 12, 1996, Senator Jerry Schmitt, the bill's principal sponsor, offered amendment AM 3083. The amendment changed the last sentence of what is now §81-1412(2) to read "The peace officer status of a law enforcement officer who fails to qualify shall be determined by the person in charge of the law enforcement agency where the law enforcement officer is employed." Nebraska Legislative Journal, 94th Neb. Leg., 2nd Sess., p. 764 (Feb. 12, 1996). During floor debate, questions arose regarding the potential problems with allowing agency heads to determine the peace officer status of themselves and their employees when either group failed to qualify on the firearms course. The following discussion took place on this topic:
 SENATOR CHAMBERS: If they fail to qualify and they are the heads of their agencies, there is nobody under this law, who could determine that they will lose their peace officer status. Isn't that true?
 SENATOR SCHMITT: That's probably correct, yes, the way that's written. I understand where you're coming from, yes.
 SENATOR CHAMBERS: And if the sheriff couldn't shoot straight and the chief couldn't shoot straight, it would be difficult for the sheriff or the chief, as the case might be, to restrict the status of a deputy or a police officer who couldn't shoot straight. Isn't that true?
 SENATOR SCHMITT: That could happen, I believe, Senator, yes. Although in dealing with a lot of people on the ranges and stuff, they work with these people, and I can't believe that somebody couldn't qualify, but it's possible that it could happen, yes.
Floor Debate on LB 1055, 94th Neb. Leg., 2nd Sess., 11558-11559 (Feb. 12, 1996).
The above discussion indicates that there was some concerns that sheriffs or police chiefs may be reluctant to take any action against themselves or deputies or officers who failed to qualify with firearms. In order to address these concerns, another amendment was offered. Senator Schmitt offered amendment AM 3521, which changed the last sentence in what is now §81-1412(2). Senator Schmitt's amendment moved to strike the language "by the person in charge or the law enforcement agency where the law enforcement officer is employed" and replace it with "by the director." Nebraska Legislative Journal, 94th Neb. Leg., 2nd Sess., p. 1171 (March 11, 1996). Thus, the director of the training center was given the responsibility to determine the peace officer status of officers failing the firearms course, instead of sheriffs and chiefs of police.
Senator Schmitt, speaking in support of AM 3521, explained why the new language was necessary:
 SENATOR SCHMITT: Yes, Mr. Speaker, members. AM3521 addresses Senator Chambers' concern about having the head of the employing law enforcement agency determine the peace officer status as an officer who fails to qualify. Under this amendment, the director of the Law Enforcement Training Center would determine the peace officer's status of all officers who failed to qualify. The bill already gives the director the authority to develop rules and regs for requalification for those officers who fail to qualify, allowing the director the final decision of peace officer's status, simply follows along that same line. This should resolve any questions about fairness, or motivation by completely removing that decision from the head of the agency that the officer works for. This was worked out, Senator Chambers had concerns about this, and I appreciate his willingness to work on this because by doing this I feel that it makes the bill a better bill and a fairer bill and makes it fairer for the officers involved. . . .
Floor Debate on LB 1055, 94th Neb. Leg., 2nd Sess., 14322-14323 (March 27, 1996).
Although it is not altogether clear, it appears to us that the Legislature understood the amendments to mean that the director would make the decision whether a law enforcement officer who failed to qualify with firearms would lose his or her standing as a certified peace officer. As previously stated, these changes addressed concerns that sheriffs and police chiefs may be reluctant to take action against themselves or their employees for failing to qualify on the firearms course. The director, on the other hand, could make the decision as a neutral third party, removed from the agency involved. We find no specific indication in the statute or the legislative history that the Legislature intended to authorize the director to only place limitations or restrictions on officers who failed to qualify with firearms, and no guidelines whatsoever are provided on this topic.
Although we believe that the above conclusion is reasonable and correct given the information available, the issue is not clear. It is possible a court could view the term "status" to mean that the director has the discretion to place limitations on a law enforcement officer's standing as a certified peace officer when the officer fails to qualify with firearms. We are not aware of any caselaw which has addressed this particular issue. In order to remove the uncertainties surrounding this topic, legislative action would probably be required.
You also asked whether the director's authority entails revocation of an officer's certification, or whether it means a temporary suspension of certificate? We believe the statutory language in § 81-1412 anticipates the director to make the initial determination regarding an officer's certification as a peace officer. If an officer fails to qualify on the firearms course, it seems the statute anticipates that the director will make a determination whether the officer is no longer a certified peace officer in Nebraska. The determination would be largely ministerial, based on the objective test results of the officer's performance on the firearms course. This procedure would not obviate the normal due process rights which must be afforded any certified peace officer prior to final action taking away his or her certification. However, we believe the language in §81-1412(2) stating that "the director shall adopt and promulgate rules and regulations for requalification for the case in which a law enforcement officer fails to qualify" indicates that the director has the statutory authority to promulgate regulations which provide for a temporary suspension of a certificate, pending requalification. The fact that the statute allows the director to adopt rules and regulations for "requalification" may indicate that there is a distinction between initial qualification and requalification for those persons who are already certified law enforcement officers. Although this point is not clear, we believe the director could provide for temporary suspensions of peace officer certifications in the regulations promulgated pursuant to § 81-1412(2).
The last question in the second part of your inquiry asks whether the use of the term status allows the director to tell an agency that officers who fail the firearms course cannot carry a handgun. We see no support for this in the statute or the legislative history. We believe rather that the director is required to determine whether the person qualified on the firearms course, which would then control the director's decision regarding whether the person retained his or her standing as a certified peace officer. There are no provisions for the director to determine specific limitations on local law enforcement agencies or their personnel in § 81-1412(2) other than the certification status of the officers.
 Effect of § 81-1412(2) on the Relative Powers of the Director and the PSAC.
In your opinion request you state that the role of the PSAC was established in Neb. Rev. Stat. § 81-1403. You then go on to ask "Does Neb. Rev. Stat. § 81-1412 diminish the role of the Police Standards Advisory Council and give more power to the Director than the Council?" Although the § 81-1412(2) allocates some limited powers to the director and the Training Center which might otherwise have fallen under the purview of the PSAC, we do not believe the PSAC's general authority over the Training Center or the authority stated in § 81-1403 are otherwise affected. It is our opinion that § 81-1412(2) carves specific exceptions, requiring the director of the Training Center to promulgate rules and regulations pertaining to firearms requalification, and requiring the Training Center to adopt and promulgate rules and regulations concerning qualification for firearm shooting courses and firearm instructors, but that these exceptions do not otherwise diminish the role or authority of the PSAC with respect to the director.
Section 81-1403 establishes the PSAC's duties. These duties include the requirement to "[a]dopt and promulgate rules and regulations for the operation of the training center." Neb. Rev. Stat. § 81-1403(1) (1994). The PSAC also has general oversight to "[d]o all things necessary to carry out the purpose of the training center, except that functional authority for budget and personnel matters shall remain with the commission." Neb. Rev. Stat. § 81-1403(10) (1994). If the Legislature had not specifically given the director of the Training Center the responsibility to promulgate and adopt rules and regulations for the requalification of officers who fail the firearms course, that responsibility would fall on the PSAC due to the provisions of § 81-1403. However, the Legislature chose to create an exception for rules and regulations pertaining to requalification of officers failing to qualify on the firearms course.
This exception only affects the director's ability to adopt and promulgate rules and regulations on the specific topic set out in § 81-1412(2). The director is not thereby given a broad grant of power which would alter the PSAC's general oversight of the training center. "To the extent there is a conflict between two statutes on the same subject, a specific statute prevails over a general statute." AMISUB v. Board ofCounty Comm'rs of Douglas County, 244 Neb. 657, 663,508 N.W.2d 827, 832 (1993). See also State ex rel. Stenberg v. Murphy,247 Neb. 358, 370, 527 N.W.2d 185, 195 (1995). Any potential conflict between the authority granted the PSAC in § 81-1403 and the authority given the director of the Training Center in §81-1412(2) is resolved by the rule of statutory construction that a specific statute will control over a general one. As previously stated, the limited exception granted to the director in §81-1412(2) does not diminish the PSAC's authority over the Training Center in any other areas other than those explicitly mentioned.
Sincerely,
 DON STENBERG Attorney General
 Timothy J. Texel Assistant Attorney General
APPROVED:
Don Stenberg
Attorney General